**COZBY v. EDWARDS.**

No. 14831.

Court of Civil Appeals of Texas. Fort Worth.

May 30, 1947.

Rehearing Denied June 27, 1947.

Robert Sansom, Bryan, Stone, Wade & Agerton and G. W. Parker, Jr., all of Fort Worth, for appellant.

G. O. Bateman and William Pannill, both of Fort Worth, for appellee.

SPEER, Justice.

On April 4, 1947, we handed down an opinion in this cause. Upon motion for rehearing, we have again gone carefully into the record and concluded to withdraw our original opinion and substitute this one in lieu of it.

Mrs. Willie Mae Edwards, for herself and as trustee for an estate, sued Mrs. Grace Cozby for the cancellation of a lease contract, and sought injunctive relief to restrain Mrs. Cozby, her agents and employees, from entering upon and removing gravel from a described tract of land in Tarrant County, Texas.

Mrs. Edwards and Mrs. Cozby will bear the same designation in this court as they did below. They are both widows and no question of parties or coverture is involved.

On or prior to February 23, 1946, plaintiff was the owner of a tract of land in Tarrant County. She and defendant thought it perhaps had valuable gravel deposits thereunder. Defendant was engaged in the business of acquiring, selling and using gravel suitable for road and concrete purposes; she wanted to locate and purchase such materials. On said date last above written the parties entered into a written contract, embracing the rights of defendant to explore the premises and ascertain if

such deposits were on the premises, and if satisfied with the quality and quantity, to lease the land. Those parts of the contract pertinent to this appeal are substantially as follows: Defendant was to make such tests and explorations on the land as she thought necessary within 30 days from the date of the contract, to determine if it contained such materials as she desired for the construction work in which she was engaged; if upon such investigation the materials were not found in paying quantities, she would promptly refill all holes and excavations made by her and restore the surface as nearly as possible, and the whole contract should be fully terminated. But if it be ascertained by defendant that there were deposits of such materials of the quality and in quantity as would justify defendant in removing same, she should have a lease on the premises for the purposes intended by the parties, for a primary period of two years from the date mentioned; that she would begin the removal of said materials within 60 days of the date of the contract; that she should have the right to erect and maintain on the premises such washing, batching, or ready-mixing plants together with houses and other equipment as may be necessary or convenient to her uses. Defendant could also erect telephone and water lines and remove by pump, water from a stream on the premises, and to have necessary ingress and egress for all purposes. That she was to pay plaintiff 20 cents per cubic yard for road gravel and 35 cents for concrete gravel taken out, In this connection, defendant obligated herself to keep an accurate record of the amount and quality of gravel so taken, which record should be subject to inspection by plaintiff, and would furnish to plaintiff a weekly report showing the quantity and quality of gravel so taken. That on or before the 15th day of each month defendant would furnish to plaintiff an itemized statement of amount and quality of the materials so removed during the preceding month and would with such statement pay plaintiff for all such materials. That if defendant failed to pay plaintiff for any materials removed by her, within 30 days from date of removal, plaintiff should have the right and option to cancel the contract. Defendant further obligated herself (a) to be financially responsible for all loss or damage to livestock belonging to plaintiff or her tenants, caused by defendant's acts or those of her employees or assigns. (b) To remove a sufficient amount of gravel from the premises within a year from the date of the contract, that plaintiff's royalty would not be less than $4,000 and should she not remove a sufficient amount to meet that obligation she would pay to plaintiff at least $4,000 within said 12 months period, "which sum will apply as a payment on the royalty which may be due, or become due seller", (plaintiff).

Plaintiff was to have the right to maintain a representative on the premises who should be entitled to full information at all times from defendant of the quantity and quality of the gravel being removed by her.

Simultaneously with the execution of the instrument above referred to, an instrument in form of a letter, addressed to plaintiff and signed by defendant passed between the parties. It was undated but both parties pled it and contend that it constituted a part of the "contract". In such circumstances, it becomes our duty to treat the letter as have the parties. Omitting formal parts, the letter reads as follows:

"Dear Mrs. Edwards: This will confirm my verbal agreement made with you that I will obtain and furnish you with a written guarantee satisfactory to you, insuring the payment of any and all sums of money which may become due you under the terms and provisions of a gravel contract this day entered into between you and me, covering the Childers place owned by you near Benbrook, Texas, and that I will not remove any gravel from said premises until said guarantee has been furnished to and accepted by you."

There were two other instruments executed at the same time, yet they apparently have little to do with the controversy between these litigants, except that one of those instruments was an agreement between plaintiff and defendant on one side and a Mr. Burkett on the other, by the terms of which each, plaintiff and defendant, obligated herself to pay him $200 to

cover losses to be sustained by him as the holder of a grass lease from plaintiff, by reason of the gravel lease between the parties. The other instrument was one between defendant and a Mr. Bateman, an attorney and brother-in-law of plaintiff, by which defendant agreed to pay him for his services in negotiating the deal between the parties. It is sufficient to say that both plaintiff and defendant have paid Burkett the amount promised, and that defendant has settled in full with Mr. Bateman. Neither of these instruments require any further attention.

The case was tried below upon plaintiff's First Amended Petition, in which she pled the contract between the parties substantially as stated by us above. She charged that the provisions contained in that part of the contract found in the letter from defendant to plaintiff, stating in substance that defendant would execute and deliver to plaintiff an acceptable "guarantee" of the performance of the contract before she removed any gravel from the premises, constituted a condition precedent to any right of defendant to remove gravel. Plaintiff alleged several other provisions of the contract which she claimed to have been breached by defendant. The trial petition charged that defendant had failed to present to her a guaranty of any kind for the performance of the contract which would entitle defendant to remove gravel from the lands, and she, therefore, had no authority whatever to so take gravel but was a trespasser on plaintiff's premises. She alleged that defendant did in fact on about April 21, 1946, without the knowledge and consent of plaintiff, remove from said premises 100 cubic yards of gravel and had not reported same to plaintiff, nor rendered statement thereof nor paid for same as provided in the contract. That on about August 25, 1946, defendant notified plaintiff she had begun taking gravel and plaintiff advised her that she had not furnished the guaranty contracted for and that plaintiff having had no knowledge of defendant's intentions to take gravel within the time provided in the contract and having received no guaranty as agreed upon, she had supposed defendant had not accepted the lease and that plaintiff had made other arrangements concerning the land. That in the same conversation she told defendant the contract was at an end. That defendant continued to remove gravel and plaintiff immediately notified defendant in writing to take no more gravel and to desist from entering the premises for such purpose.

Plaintiff also alleged that defendant had excavated large holes and pits on the land damaging it for the purposes intended by plaintiff and sought recovery therefor. She prayed that the lease contract be "cancelled and held for naught" and that the temporary injunction theretofore issued be made permanent restraining defendant from not only taking gravel from the premises but from in any way trespassing thereon without the consent of plaintiff. She also prayed for her damages to the land and for general, special, and equitable relief.

Defendant answered by general denial and by special pleas. The latter embraced all the provisions of the two instruments pleaded by plaintiff, as well also certain other letters and the two instruments previously referred to by us as being between the parties to this suit on one side and Burkett, the tenant on the other, and the agreement between defendant and Mr. Bateman, the attorney who negotiated the lease contract deal and drew all papers. Defendant further alleged that she had kept and performed all promises and agreements made by her except in so far as plaintiff has, by her acts, prevented defendant from performing. She alleged that she did enter upon the premises on April 21, 1946, and remove 100 cubic yards of road gravel therefrom and thereafter, within the time and in the manner provided in the contract, prepared a written statement showing the quality and quantity of gravel taken and wrote her check for the amount due thereunder payable to plaintiff, inclosed all in a sealed envelope, properly addressed and stamped, and that she posted same in the United States Mails. Defendant specially pleaded that she had repeatedly requested plaintiff to advise her what kind of guaranty she wanted or that would be acceptable to her and that she stood ready able and willing to furnish it when so advised; but that plaintiff had at all times

declined to do so. Defendant offered to perform in this respect at any time plaintiff would advise her the nature of guaranty she would accept. She further pleaded that for the gravel taken by her on August 26, 1946, she likewise made written report and inclosed same along with check to cover in the manner provided by the contract. By a trial amendment defendant pleaded that the provisions of the letter part of the contract which provided for the furnishing by her of a guaranty of the performance of the contract was not a condition precedent to her right to remove gravel from the premises but was a mere covenant, or at most a condition subsequent, neither of which would effectuate the automatic cancellation of the contract for failure to perform. She pled waiver and estoppel by plaintiff to declare a forfeiture of the contract on or after April 21, 1946; that she took no affirmative action at that time nor thereafter until on about August 26, 1946 to forfeit or cancel said contract. She prayed that plaintiff take nothing by her action, that all injunctive relief be denied and that plaintiff be required to advise defendant the nature of the guaranty that would be acceptable to plaintiff and for general and special relief.

Trial was to a jury. At the conclusion of the evidence both parties moved for an instructed verdict based upon reasons shown. Both motions were refused by the court and special issues were submitted to the jury. In response to the issues the jury returned substantially the following answers: (1) Mrs. Cozby (defendant) did not execute to Mrs. Edwards (plaintiff) a bond or guaranty that she would carry out the terms of the contract. (2) Defendant entered upon the land on April 21, 1946, and started the development of the property. (3) That such action (on that date) was not started only to hold the property. (4) Plaintiff had actual knowledge of the operations of defendant on April 21, 1946. (5) Plaintiff had such knowledge prior to August 26, 1946. (6) Defendant sent a statement properly, addressed to plaintiff on May 8, 1946. (7) Such statement (referred to in Issue 6) contained a check for $20 signed by defendant. (8) Plaintiff received the statement and check. (9) Plaintiff's property has not been depreciated as a result of the operations of the gravel pit. (Issue 10 inquired as to the amount of damage to the property and was not answered.)

After the verdict was returned and received by the court, plaintiff timely filed her motion for judgment notwithstanding the verdict except the answer to special issue No. 1, about which there was no controversy of fact. After hearing on the motion the court sustained it and entered judgment non obstante veredicto for plaintiff. The judgment cancels the lease contract and makes permanent the temporary injunction theretofore issued by the court, forever enjoining defendant, her employees and associates, from entering the premises of plaintiff and removing sand, material, rock or gravel therefrom without the consent of plaintiff. The judgment described the land involved as it was in the petition. Defendant's motion for new trial being overruled, exceptions and notice of appeal followed; hence this appeal.

The judgment non obstante veredicto as entered, denied defendant every right claimed under her pleadings and the evidence in support thereof. Her points of error relied upon here present her entire theory of the case and while we shall not attempt to quote them nor discuss them in the order given, we shall summarize them in the order we shall discuss them. The controlling questions are: (1) Was the obligation of defendant to furnish to plaintiff an acceptable guaranty that she would perform her part of the contract before removing any gravel, a condition precedent to her right to remove gravel from the premises, or was it a mere covenant? (2) Was the failure of defendant to furnish the guaranty the result of plaintiff's failure to advise defendant of the nature of the obligation that would be acceptable to her? (3) Did plaintiff, by her acts, waive, either permanently or temporarily, the furnishing of such guaranty? And (4) If plaintiff did so temporarily waive the requirement could she later revoke the waiver and declare the contract forfeited, without giving defendant an opportunity to, within a

574

reasonable time thereafter, comply with the terms of the contract in the respect mentioned?

■ We have concluded that from the language used in the contract and the intention of both parties reflected by their testimony, that the obligation of defendant to execute and deliver to plaintiff a guaranty of the faithful performance of the contract before she removed any gravel from the premises, was a condition precedent to defendant's rights to remove gravel, and if strictly enforced would have prevented her from taking gravel until complied with.

Defendant admittedly did not furnish the guaranty, but began taking gravel on April 21, 1946, within the period of time allowed her under the contract. It is quite obvious that both parties contemplated that defendant had assumed obligations greater than the mere payment for the amount of gravel taken. She was responsible for loss and damage to livestock caused by her acts and those of her employees as well also in the event she did not take enough gravel during the first year that plaintiff's royalty would amount to $4,000 she would pay the difference; she was also bound to restore the surface by filling up holes and pits opened by her. The guaranty of performance embraced all of these things and inured to the benefit of the plaintiff—it was undoubtedly a part of the consideration to plaintiff for letting the lease. It is clear to us also, that both parties contemplated that the controversial guaranty would be of a nature other than the personal financial ability of the defendant. This, because they discussed at the time of executing the contract the nature of such guaranty. Defendant asked plaintiff what she would require, and plaintiff said in substance that if defendant's brother-in-law in one of the banks would sign it, it would be all right; defendant said in reply she would ask her brother-in-law, she thought he would, and further testified that she asked plaintiff if it would be satisfactory if she placed cash in escrow at the bank to insure payments; that nothing more was said or done about it at the time—that they did not come to any definite agreement about it and plaintiff said, in effect, that we are all tired and we will wait until you start moving some gravel and then fix it up. It may be noted, that at the time of making the contract and the conversation above mentioned defendant had not tested the premises and did not then know if she would carry out the lease contract because there might have been no gravel found. The primary purpose of both parties was clearly such that if upon exploration by defendant she found gravel deposits in paying quantities she would acquire the right to remove such material at the price and under the conditions of the contract.

■■ Whether or not a limitation, condition or proviso in a contract is one precedent, subsequent, or a mere covenant is not to be determined alone by any technical language used, but primarily by the intention of the parties as evidenced by the transaction and the language used. A condition precedent is one which has the effect of precluding the passing of title to grantee, (such as the acquisition by defendant in this case, of the ultimate and primary right to remove gravel from the leased premises) until the condition has been performed or fulfilled (i. e. the promise by defendant to furnish to plaintiff a guaranty acceptable to her before defendant removed any gravel from the premises). 12 Tex.Jur. 126, Sec. 83.

In the adopted opinion by the Commission of Appeals, Burns v. American Nat. Ins. Co., 280 S.W. 762, 765, the controlling rule here was announced to be: "'condition precedent' is such as must happen or be performed before a right can accrue to enforce an obligation dependent upon the happening or performance thereof against another in favor of one claiming such right." The same rule is announced in Bowers v. Bowers, Tex.Civ.App., 99 S.W. 2d 334. In Reinert v. Lawson, Tex.Civ. App., 113 S.W.2d 293, it was held that parties to a contract may agree that it shall not become effective until some specified condition is performed, in which case there is no binding contract until such condition, which is a "condition precedent", has been complied with. See also Courreges v. System Freight Service, Inc., Tex.Civ.App., 152 S.W.2d 841; and Southern Mortgage

Co. v. McGregor, Tex.Civ.App., 279 S.W. 860, affirmed by Tex.Com.App., 286 S.W. 1086.

In 15 C.J.S. p. 811, under caption "Condition Precedent" this general definition is given: Condition Precedent, "In general, one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed; one which must be performed before the interest affected by it can vest; a fact which must exist before a duty of immediate performance of a promise arises; and a condition which involves anything in the nature of consideration is, in general, a condition precedent, and so usually where the condition is in the nature of a consideration for the concession, its performance will be regarded as intended to precede the vesting of any right, and so a condition precedent." The same rule is announced, even more elaborately, in 12 C.J. 407, under the caption of "Condition Precedent", Sec. (1)A.

12 Amer.Jur. 846, Sec. 296, discussing "Condition Precedent" among other things says: "Whether the doing of an act by the obligee is a condition precedent of the obligation depends not on any hard and fast rule as to the time when the act is to be done, but on the intention of the parties as deduced from the whole instrument". And further: "A condition precedent to an obligation to perform immediately calls for the performance of some act or the happening of some event after a contract is entered into and upon the performance or happening of which its obligation to perform immediately is made to depend."

 Referable to the second question posed, as to whether defendant's failure to deliver the guaranty was caused by the refusal of plaintiff to advise her the nature of the guaranty she would require under the contract, we think presents no error. In the first place, the record shows that on the day the contract was signed defendant asked plaintiff what kind of a guaranty would be acceptable to her. We have already pointed out that on that occasion plaintiff told her that if her brother-in-law would sign, it would be all right, but that nothing definite was agreed upon at the time. On April 21, 1946, defendant says she removed 100 cubic yards of road gravel. After February 23, 1946, the day on which the contract was signed, until about August 26, same year, defendant made no further inquiry of plaintiff about the nature of guaranty she would accept. Defendant, again on about August 26th, began to remove gravel, (amount removed not shown) and then contracted plaintiff on the telephone to advise her that she was taking gravel. At that time, plaintiff said she was surprised and thought defendant had decided not to take the lease and that she had made other arrangements. A controversy arose at that time and plaintiff told defendant she had not given the guaranty and that her contract was at an end. Defendant insisted that if plaintiff would advise her what kind of guaranty she wanted, she (defendant) was anxious to comply with it. In the second place, there is nothing in the contract to indicate that plaintiff had any obligation to advise defendant of the nature of the obligation she wanted. Defendant knew the nature of her promise of guaranty, and if she had, in good faith, tendered to plaintiff adequate guaranty covering the terms of her contract, plaintiff would have had no right to arbitrarily nor capriciously refuse it. No useful purpose would be served by theorizing on what might have been done by these parties on August 26th, to effectuate the evident purpose of the contract instead of the course they did pursue.

Defendant's plea of waiver by plaintiff, and the evidence adduced thereon and the jury verdict we think are very material in this controversy. If defendant's obligation to furnish to plaintiff an acceptable guaranty that she would perform the contract before she removed any gravel, was a condition precedent to her right to remove gravel, (as we think it was) it obviously became a part of the consideration moving to plaintiff. We know of no reason why plaintiff could not waive such condition or any other part of the consideration if she chose to do so, if such waiver was not detrimental to any rights of defendant. It is true that no issue was submitted specifically inquiring if plaintiff had waived such condition and obligation yet issues were submitted and answered which found

the essential elements of waiver by plaintiff. The jury verdict forces the inevitable conclusion that plaintiff did, at least, temporarily waive the requirement of a guaranty.

It was stipulated by the parties at the trial, that for the gravel taken out by defendant on August 25th and 26th, she rendered statement and inclosed check to plaintiff in the manner and within the time provided by the contract and that plaintiff received them, and promptly returned them to defendant.

Plaintiff knew quite well, when she received the statement and check on May 8, 1946, for gravel taken by defendant on April 21st, the defendant had not executed and delivered to her any form of guaranty or security that she would perform the provisions of the contract. The jury found upon competent evidence that plaintiff knew defendant had operated the gravel pits on April 21, 1946 and that she had received through the mail a statement and check from defendant disclosing the quality and quantity so taken and the contract price thereof. The jury further found that plaintiff knew of such operations by defendant prior to August 26, 1946. Defendant had testified that she mailed the statement showing the kind and quantity of gravel she had removed on April 21, 1946 and inclosed a check for $20 to cover the contract price therefor. Mr. Puckett testified that he told plaintiff last of April or early in May that defendant had taken some gravel from the place on April 21, 1946. Plaintiff had allowed her tenant, Mr. Puckett, to deduct from his rentals the $200 she was to pay him on account of the lease to defendant, prior to August 26, 1946. Plaintiff denied receiving the statement and check and said she did not know defendant had taken any gravel prior to their conversation on the 'phone on August 26th. The jury verdict was against her contention.

It was during the telephone conversation on the 26th of August, 1946, that plaintiff advised defendant that her lease contract was at an end for failure to furnish the guaranty as contracted for. She then, on the next day, gave defendant written notice to "quit"; defendant did not comply and the temporary injunction was procured.

■ Based upon the jury verdict, we think plaintiff temporarily waived her right of enforcement of the condition precedent for defendant to furnish to her the guaranty, a thing she had a right to do if it did not affect the interest of defendant, and it surely did not do that. Such waiver remained effective until such time as plaintiff retracted it, which appears to have been on August 26, 1946. This principle is recognized in Williston on Contracts, Vol. Three, Sec. 690, page 1993–4. Substantially the same rule is announced in 12 Amer.Jur. 921, Sec. 355.

At the time plaintiff advised defendant her contract was at an end for failure to execute the guaranty, thereby withdrawing or retracting her previous acts of temporary waiver of that provision of the contract, she did not offer to give defendant an opportunity to make and deliver the guaranty, which plaintiff had to that time waived.

■ It will be observed that the very inception of the instant suit was one in equity seeking a temporary injunction against defendant to restrain her from entering the premises and removing gravel therefrom. The date on which that action was filed is not revealed, but the order of the court is referred to in the pleadings and this judgment as one having been "previously entered". We think it a sound principle of equity to be applied in this case, that where plaintiff has temporarily waived the full performance of making the guaranty, the contract could not be cancelled by plaintiff for failure by defendant to do a thing plaintiff had waived; that if, as and when plaintiff sought to revoke her waiver and again require that defendant perform the waived condition, plaintiff, in all fairness and equity, should be required to apprise defendant that she had retracted the temporary waiver and would demand performance, and then give defendant a reasonable time thereafter in which to comply. This is true because defendant was doubtless led to believe by plaintiff's acts that she had waived this requirement and could not know how long she would continue to waive it. In the very telephone conversation between the parties on August 26, 1946, when plaintiff advised defendant that her contract was at an end, defendant again in-

sisted upon plaintiff advising her the nature of a guaranty that would satisfy her and said she was able and ready to give it. Plaintiff refused the request, gave defendant written notice to not enter the premises, and without further notice, in so far as this record is concerned, applied for and procured the temporary injunction. In cases such as this where equity is sought, one must conform to the maxim, "He who seeks equity must do equity."

We think the trial court erred in entering the non obstante veredicto judgment. In doing so, he disregarded the verdict of the jury which unquestionably established the essential elements of at least a temporary waiver by plaintiff of the guaranty of performance by defendant found in the contract.

■ In view of the nature of this suit to cancel the lease contract and for the ancillary equitable relief by injunction and the nature of the jury verdict we find ourselves unable to dispose of this appeal by a reversel and rendition of judgment on the verdict in compliance with the general Rule 324, Texas Civil Procedure, as interpreted in Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; and Reid v. Associated Employers Lloyds, Tex.Civ. App., 164 S.W.2d 584, writ refused. We say this because the verdict and the testimony upon which it was based, established only that a temporary waiver by plaintiff was shown and that such waiver was subsequently revoked. In view of what we have already said in this regard, the verdict does not authorize us to reinstate the contract for its entire life instead of cancelling and holding it for naught as did the trial court. We conclude that the best interest of all parties would best be served by reversing and remanding the cause in conformity with these holdings. Of course the permanent injunction decreed by the court was based upon his order cancelling the contract, and if the contract should not be cancelled under the circumstances of this case, no permanent injunction should have issued. We therefore reverse and remand the judgment of cancellation and the issuance of permanent injunction; this without prejudice or restraint upon the court, if he sees proper to do so, issuing a temporary injunction restraining defendant from entering upon and removing gravel from the premises until such time as the court shall determine would be a reasonable time to allow defendant to tender to plaintiff an adequate guaranty insuring her full performance of the contract, thereafter, and all other such orders and decrees that the trial court shall deem right and equitable between the parties as the facts appear to exist. Reversed and remanded.