The PERMIAN CORPORATION, Appellant,

v.

TRUMBULL ASPHALT COMPANY OF DELAWARE, Appellee.

No. 612.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 21, 1971.

Rehearings Denied Nov. 11, 1971.

Rankin, Kern & Martinez, H. H. Rankin, Jr., McAllen, for appellant.

Adams, Graham, Lewis, Jenkins & Graham, John Lewis, McAllen, and Marshall Graham, Harlingen, for appellee.

OPINION

BISSETT, Justice.

This is a suit for damages to property resulting from the rupture of a storage tank that was filled with hot liquid asphalt. The Permian Corporation, plaintiff and cross-defendant, hereinafter called "Permian", sued Trumbull Asphalt Company of Delaware, defendant and cross-plaintiff, hereinafter called "Trumbull", seeking a recovery for the cost of putting its tank farm back into the condition that it was in prior to the rupture of the storage tank and for delinquent rent alleged to be due. Trumbull, by way of set-off, prayed for an allowance for certain inventory losses that occurred during the existence of the lease agreement between it and Permian, and also filed a cross-action against Permian for recovery of the value of the asphalt that was lost when the storage tank collapsed.

Trial was to a jury and judgment was entered on the jury verdict granting Permian the amount of rent found to be due it by Trumbull, less certain offsets found to be due Trumbull, that Permian take nothing against Trumbull on its action for damages, and that Trumbull take nothing on its cross-action for damages. The portion of the judgment concerning the rent and set-off is not appealed, but Permian has duly and timely perfected its appeal from the judgment denying it any recovery on its claim for damages. Trumbull appeals from the judgment denying it any recovery for damages asserted in its cross-action. We affirm.

Permian was the owner and operator of a storage tank farm located in Brownsville, Cameron County, Texas. Trumbull was engaged in the business of processing and selling asphalt. In the latter part of 1964, Permian, by written contract, leased and furnished to Trumbull certain storage tanks, having a cumulative storage of 78,000 barrels. Under the contract, among other services, Permian was required to "receive, unload and store to the capacity of the tanks all asphalt blending material delivered from time to time by or on behalf of Trumbull to the Brownsville terminal in barges and tank trucks". Either party could terminate the agreement, effective November 1, 1965, or on November 1 of any succeeding year, by giving the other party written notice at least 90 days prior to the termination date. Trumbull was served with such termination notice on July 29, 1965, to be effective on November 1, 1965. However, Trumbull continued to use the storage facilities for the storage of asphalt after November 1, 1965.

By letter dated March 20, 1967, accepted by Trumbull on April 1, 1967, Permian again agreed to furnish certain tanks to Trumbull for the purpose of terminaling asphalt for its account and to furnish certain equipment and "labor, utilities and other incidental expense required to handle your material with these facilities". It was later agreed that Permian would not cancel "the present agreement" prior to April 1, 1968.

According to Permian, the agreement that was in effect between the parties at the time the storage tank ruptured was oral, intended to last just long enough to liquidate the existing inventory that was in the tank storage farm, and as soon as all of the asphalt was shipped out the entire operation would be discontinued. According to Trumbull, the basic agreement evidenced by the letter simply continued the arrangement between the parties as the

same existed under the written terminaling agreement executed in the latter part of 1964.

Trumbull's asphalt was shipped by barges to the dock at Port Brownsville, where it was pumped through pipelines owned by Permian into the tanks that were leased to Trumbull. The unloading operations were conducted by Permian.

In May of 1968, Trumbull needed additional storage. The only tank not in service was tank #9, that, according to Permian, was in poor condition. Permian claims that it told Trumbull that the tank was unsafe and would not hold asphalt. Trumbull denied that any such statements were made, but dispatched A. D. Morgan, one of its employees, to the tank farm. He inspected the tank, made certain repairs and installed the necessary heating coils, all at Trumbull's expense.

On May 22, 1968, Trumbull shipped two barges containing 32,000 barrels of hot liquid asphalt to the tank farm for unloading and storage. At that time the total tank storage available to Trumbull, including tank #9, amounted to 33,000 barrels. Unloading operations were commenced. Initially, asphalt was pumped into other tanks but was switched over to tank #9 at about 9:00 in the evening. Pumping operations into tank #9 continued until 4:00 a. m. the next morning, when Mr. Pierce, (the tank farm foreman for Permian) noted a bulge in this tank. Pierce, without order from anyone, installed a cable about six feet off of the ground around the outside of tank #9 in order to strengthen the tank. Pumping operations into tank #9 were stopped but were continued into other tanks. Schofield (Permian's tank farm superintendent) arrived at the tank farm at about 7:30 a. m. and was informed by Pierce of what had happened. Tank #9 was then inspected by Schofield who told Pierce "to wait until Mr. Morgan got there". There is a conflict in the evidence as to what Pierce told Morgan when he arrived at the tank farm at about 8:30 that

morning; Pierce testified that he showed Morgan the bulge in the tank and told him that he had put a cable around it and that Morgan said "well, that is fine" and that Morgan then told him to go ahead and fill tank #9. Morgan denied the statements so made by Pierce and insisted that no one had called his attention to the bulge in the tank or that a cable had been placed around the tank or that he told Pierce to continue pumping operations into the tank. Pumping operations were resumed into tank #9 at about 9:00 a. m. and were shut down the same morning at about 11:00 a. m. when the usable capacity in the tank was reached. At about 2:00 p. m., tank #9 burst, causing its entire contents (9,130 barrels of liquid asphalt) to spill and to spread over a considerable portion of the tank farm.

With respect to Permian's points presented by this appeal, the jury found substantially as follows: (a) at the time tank #9 was made available to Trumbull for the storage of liquid asphalt, the supervisory personnel of Permian knew that the condition of the tank was such that it would not hold liquid asphalt; (b) the furnishing of tank #9 by Permian and the pumping of liquid asphalt into it constituted negligence and a proximate cause of the collapse of the tank; (c) the supervisory employees of Permian knew and appreciated the risk of liquid asphalt being spilled on Permian's premises if such asphalt was pumped into tank #9; (d) the conduct of Permian in permitting liquid asphalt to be pumped into tank #9 was negligence and a proximate cause of the occurrence in question. With respect to Trumbull's points, the jury found: (a) prior to the rupturing of tank #9, supervisory employees of Trumbull knew that the walls of the tank were bulging, knew and appreciated the risk of liquid asphalt being spilled on the premises after discovery that the walls were bulging, and with such knowledge and appreciation of the risk put asphalt into the tank; (b) A. D. Morgan of Trumbull knew that the walls of tank #9 were bulging after the tank had been partially

filled with liquid asphalt, and that he, with such knowledge, instructed Robert Pierce to continue to fill the tank; (c) the pumping of liquid asphalt into tank #9 after A. D. Morgan had knowledge that the walls of the tank were bulging was negligence and a proximate cause of the collapse of the tank; (d) Robert Pierce was a borrowed employee of Trumbull in continuing to pump more liquid asphalt into tank #9 after it had been discovered that the walls were bulging. The jury further found: (a) there was no agreement that Permian would furnish and maintain tank #9 in a safe condition for the purpose of storing Trumbull's liquid asphalt; and (b) there was no agreement that Permian would be responsible for the loss of any asphalt owned by Trumbull which had been pumped into tank #9.

On the damage issues, the jury found that Permian's cost of restoring its premises to be $51,500.00 and that the value of Trumbull's asphalt loss to be $34,228.00. Judgment was entered denying recovery for such sums of money to each litigant.

█ We will first consider Permian's third point of error wherein it complains of the trial court's action in overruling its objections to the court's charge. The transcript shows that after the close of the evidence counsel for Permian dictated certain objections to the charge of the court that were later transcribed by the court reporter and filed among the papers in the case. There is nothing in the transcript to show that the transcribed objections were ever presented to the trial judge, or acted upon by him, as required by Rule 272, Texas Rules of Civil Procedure. The document evidencing the objections does not contain the signature of the trial judge nor does it show any endorsement of his ruling thereon as required by the rule. In this state of the record, Permian's objections to the charge of the court were not properly preserved for review. Big Three Welding Equipment Company v. Roberts, 399 S.W. 2d 912, 918 (Tex.Civ.App., Corpus Christi,

1966, wr. ref. n. r. e.); Charter Oak Fire Insurance Company v. Perez, 446 S.W.2d 580, 582 (Tex.Civ.App., Houston 1st, 1969, wr. ref. n. r. e.); Texas General Indemnity Co. v. McNeill, 261 S.W.2d 378 (Tex. Civ.App., Beaumont, 1953, n. w. h.). Permian's third point of error is overruled.

Counsel for Trumbull also dictated certain objections to the court's charge which were later transcribed but were not presented to the trial judge so that he could endorse his ruling and signature thereon. The overruling of Trumbull's objections to the charge is not brought up as error in this appeal. We, therefore, do not consider such objections.

Seventy-two special issues were submitted to the jury. For the reasons stated, the charge of the court has been considered by us as though no objections were made to it. We do not pass or comment on the propriety of any of the issues submitted.

█ Permian's first point of error reads as follows:

"The Trial Court erred in entering a Take Nothing Judgment upon APPELLANT'S First Cause of Action based on the jury's answer to the Special Issues, but rather should have rendered a judgment in the amount of FIFTY-ONE THOUSAND FIVE HUNDRED AND NO/100 ($51,500.00) DOLLARS. (Germane to Paragraph LXXV of the PLAINTIFF'S AMENDED MOTION FOR NEW TRIAL)."

Trumbull's first point of error (in effect, a cross-point) reads as follows:

"The Trial Court erred in overruling TRUMBULL'S motion to disregard certain findings of the jury and to render Judgment for TRUMBULL for its damages as found by the jury (Motion to Disregard Jury Findings and for Judgment Tr. 97) because such findings were not supported by the evidence, immaterial and not legally defensive, and the

pleadings of PERMIAN, its judicial admissions, the findings of the jury and the uncontradicted evidence established (1) PERMIAN'S negligence proximately caused TRUMBULL'S damages and (2) PERMIAN, who was in the business of leasing and supplying storage tanks, leased and supplied the tank in question to TRUMBULL for the purpose of receiving and storing liquid asphalt, that such tank at the time it was so leased and supplied to TRUMBULL for such purposes was not reasonably fit to hold liquid asphalt which caused TRUMBULL to lose its asphalt, and, therefore, TRUMBULL was entitled to Judgment for its damages under the doctrine of strict liability in tort."

Neither point of error presents anything for appellate review as neither is in compliance with Rule 418, T.R.C.P. Permian's point, in essence, complains that the trial court erred in not rendering judgment in its favor for its damages as found by the jury. This point is so general as to encompass any and every error committed by the trial court, and, therefore, means nothing. This point is insufficient to direct our attention to any particular reason why judgment should have been rendered in Permian's favor. Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 941 (1956); McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643 (1957); Pleasant Grove Builders, Inc. v. Phillips, 355 S.W.2d 818 (Tex.Civ.App., Dallas, 1962, wr. ref. n. r. e.); Texas Reserve Life Ins. Co. v. Texas Rehabilitation Center, 332 S.W.2d 403 (Tex.Civ.App., San Antonio, 1960, n. w. h.).

What has already been said with respect to Permian's first point also applies to Trumbull's denominated first point as it, also, is too general to direct our attention to any particular jury finding. An inspection of the motion itself shows that it was directed at the answers to fourteen special issues. The effect of such a broad and general point is to simply assert that the trial court committed reversible error in not setting all of these jury answers aside and rendering judgment for Trumbull on the amount found by the jury to be due it on its damage issue. See Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197 (1956); Big Three Welding Equipment Company v. Roberts, supra; Weatherred v. Kiker, 357 S.W.2d 182 (Tex.Civ.App., Amarillo, 1962, wr. ref. n. r. e.).

■ There is another reason why we cannot consider Trumbull's first point. There is no showing in the record that Trumbull's motion to disregard any jury findings was ever presented to or acted on by the trial judge. In that state of the record, the point was not preserved for appellate review. Murphy v. Maroney, 456 S.W.2d 787 (Tex.Civ.App., Waco, 1970, wr. ref. n. r. e.); Moreno v. Jenkins, 436 S.W.2d 620 (Tex.Civ.App., Austin, 1969, wr. ref. n. r. e.); Producers Inv. Corp. v. Spears, 232 S.W.2d 761 (Tex.Civ.App., Ft. Worth, 1950, n. w. h.); Cole v. Grigsby, 35 S.W. 680 (Tex.Civ.App., 1894), affirmed 89 Tex. 223, 35 S.W. 792.

■ In deciding as we do that both points are too general to direct our attention to any specific error, we have considered the statement and argument under each, and find each point to be without merit. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943); Tindall v. Tacconelly, 328 S.W.2d 909, 911 (Tex.Civ. App., San Antonio, 1959, wr. ref. n. r. e.); Holzapfel v. Brueggman, 404 S.W.2d 916, 919 (Tex.Civ.App., Corpus Christi, 1966, wr. ref. n. r. e.); Smith v. Davis, 453 S. W.2d 340 (Tex.Civ.App., Ft. Worth, 1970, wr. ref. n. r. e.).

Both points contain aspects of "no evidence" and "insufficient evidence" contentions. We have carefully reviewed the entire record in this case. The jury found that Permian was guilty of negligence that proximately caused the damage to its tank farm and that it assumed the risk of asphalt being spilled on and damaging its property. The jury also found that Trumbull was guilty of negligence that proxi-

mately caused the loss of the asphalt and that there was no agreement that Permian would furnish and maintain tank #9 in a safe condition for the storage of Trumbull's asphalt or that Permian would be responsible for the loss of any asphalt stored therein. The evidence on all crucial issues was conflicting, but the members of the jury were the sole judges of the credibility of the witnesses and the weight to be given their testimony. They are the exclusive judges of controverted issues of fact raised by the evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Garza v. Anderson, 417 S.W.2d 368, 371 (Tex. Civ.App., Corpus Christi, 1967, n. w. h.); Bradford v. Fort Worth Transit Company, 450 S.W.2d 919, 928 (Tex.Civ.App., Ft. Worth, 1970, wr. ref. n. r. e.). We have already stated in substance the testimony of the key witnesses touching on the points presented for appellate review. No useful purpose can be served by a further discussion of the evidence offered at the trial. Suffice it to say that the evidence would have supported a jury finding either way on all the issues submitted. We find that there was ample evidence of probative value to support all findings made by the jury. We hold that the jury's answers to all special issues submitted were not against the great weight and preponderance of the evidence. Permian's first point of error is overruled. Trumbull's first point of error is overruled.

■ In Permian's second point, complaint is made that the trial court erred in overruling an objection during the cross-examination of the witness Schofield when he was being questioned about market value of tank #9. The contention is without merit. In any event, the error of which Permian complains, if it be error, did not cause the rendition of an improper judgment. Rule 434, T.R.C.P. The answers by the jury preclude recovery of any damages by Permian. The point is overruled.

■ Trumbull's other cross-point (styled cross-point of error no. one) com-

plains that there was "no evidence" to support the jury finding that Robert Pierce was a borrowed employee of Trumbull in continuing to pump asphalt into tank #9 after it was discovered that the sides of the tank were bulging, or alternatively, such finding is "against the weight and preponderance of the evidence". The issue of "no evidence" is a question of law, and the issue of "against the weight and preponderance of the evidence", is a question of fact. Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982 (Tex.Com.App., 1941, opinion adopted). Both issues are raised in a single point. The statement, argument and authorities under this cross-point and its second reply point are combined into one section of Trumbull's brief; it is not clear if Trumbull is arguing the law question of "no evidence" or the fact question of "against the weight and preponderance of the evidence", or both. Be that as it may, the jury found that Pierce was a borrowed employee of Trumbull in continuing to pump asphalt into tank #9 under the conditions existing. An examination of the record shows that there was evidence legally sufficient to support this jury finding. In addition, there is another reason why Trumbull's complaint that the fact finding is "against the weight and preponderance of the evidence" cannot be considered on appeal. Trumbull has perfected an appeal from that part of the judgment that denied it a recovery of damages asserted in its cross-action. It did not file a motion for new trial. Therefore, we do not have jurisdiction to determine any question as to the weight and preponderance of the evidence concerning its appeal. Rule 324, T.R.C.P.; Darryl v. Ford Motor Company, 440 S.W.2d 630, 633 (Tex.Sup. 1969); Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); Walker-Smith Co. v. Coker, 176 S.W.2d 1002 (Tex.Civ.App., Eastland, 1944, wr. ref. w. m.); Long v. Mooring, 183 S.W.2d 232 (Tex.Civ.App., Austin, 1944, n. w. h.).

■ Finally, even if it be held that Pierce was not Trumbull's borrowed em-

ployee, it does not follow that the judgment entered in this case must be reversed. It is undisputed that Trumbull had absolute control of the asphalt on the barges; it could have ordered that unloading operations cease; it did not do so. The actual unloading or pumping of the asphalt from the barges was the function and duty of Permian, but the decision as to whether the asphalt would be pumped *from the barges* was Trumbull's alone. The jury findings that Trumbull, after learning that the sides of the tank were bulging, permitted the asphalt to be pumped from the barges into the tank, together with the other findings made by the jury adverse to Trumbull, foreclose any recovery by Trumbull for the value of the asphalt that was lost as a result of the collapse of tank #9. Trumbull's cross-point of error no. one is overruled.

The trial court entered a correct judgment in this case. Reversible error is not shown by the record. Accordingly, the judgment of the trial court is affirmed.

SHARPE, J., not participating.