G. Phillip **ALBRIGHT**, Appellant,

v.

**TEXCELLERE CORPORATION,**
Appellee.

No. 1089.

Court of Civil Appeals of Texas,
Corpus Christi.

Dec. 29, 1977.

Rehearing Denied Jan. 31, 1978.

**534**

Richard B. Stone, Stone, Berryman & Giles, Corpus Christi, for appellant.

Howard F. Sudduth, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

Appellant G. Phillip Albright, a real estate broker, appealed from a judgment non obstante veredicto rendered against him on September 8, 1975, in his suit to recover real estate commissions from appellee, Texcellere Corporation. A detailed explanation of the posture of this case is necessary to clarify the setting in which the merits are here considered.

The case was submitted to the jury on only one special issue, which was answered favorably to Albright. In his motion for judgment, Albright asserted his right to recover his brokerage commissions based on this favorable jury finding. Texcellere argued in its motion for judgment non obstante veredicto that the special issue was not a controlling issue, and that Texcellere should prevail as a matter of law, setting forth several grounds therefor.

Albright perfected his appeal to this Court. The transcript was filed November 5, 1975, along with appellant's first motion to extend time to file the statement of facts. Between the date judgment was rendered and the expiration of 60 days, the court reporter, Mrs. Florene Smith, became ill. Her recovery was gradual, and additional extensions of time were requested and granted. On three different occasions the case was set for submission and oral argument, but postponed because the statement of facts was not completed.

Through extended delays, the attorneys, as well as the court reporter, were confident that the statement of facts could be completed. Mrs. Smith recovered sufficiently to be able to transcribe her notes on a limited, but regular schedule. A conference was held by this Court and the attorneys on September 3, 1976, to discuss appellant's sixth motion to extend time. The appellants reported periodically on the progress of Mrs. Smith, and reassured this Court that the statement of facts would be completed by November 30, 1976. The Court granted the motion with the stipulation that the statement of facts must be

filed on or before November 30, 1976, or the Court would entertain a motion to reverse the judgment and remand the cause for a new trial so that the appellant might obtain a statement of facts.

The seventh and last motion to extend time was filed November 30, 1976. This motion reported that significant progress was being made on the statement of facts, that Mrs. Smith believed she could complete her work by January 31, 1977, and that both parties desired to exhaust all means available to have the statement of facts prepared and filed rather than have the case reversed. To avoid a possible unnecessary retrial, this Court granted the seventh motion to extend the time.

In late January of 1977, Mrs. Smith suffered a severe relapse and subsequently died. Although efforts were made, it was determined that it was impossible for another court reporter to complete the statement of facts because Mrs. Smith used a unique individualized style of shorthand. No tape recording had been made during the course of the trial, and therefore there was no back-up source from which the record could be transcribed by another person.

Appellant Albright then filed a motion to reverse and remand the entire case for a retrial. On March 3, 1977, a hearing was held on this motion by this Court. The attorneys were asked to discuss their respective positions as to the actual need for a statement of facts now that it was certain that the partially completed statement of facts could never be finished. After the hearing, the Court asked the attorneys to determine whether they could prepare an agreed statement of facts (See Rule 378) or whether they could agree that the case could be submitted on law questions only, in which event the Court could then take the case under submission without the original completed statement of facts. At such hearing it was agreed by the parties and the Court that if it developed that evidentiary issues were involved so that a statement of facts would be necessary, the case would be remanded for new trial.[1]

It was determined however, that appellant did not file a motion for new trial, thereby limiting the need for a statement of facts. Appellee agreed that there was ample evidence to support the only jury issue submitted. (For the results of such a situation, see: *Saldana v. Garcia,* 275 S.W.2d 563 (Tex.Civ.App.—San Antonio 1955, aff'd 155 Tex. 242, 285 S.W.2d 197 (1956); *Jamison v. City of Pearland,* 489 S.W.2d 636 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n. r. e.); *Gulf Collateral, Inc. v. Edwards,* 467 S.W.2d 690 (Tex. Civ.App.—Houston [1st Dist.] 1971, no writ); *Permian Corp. v. Trumbull Asphalt Co. of Del.,* 472 S.W.2d 555 (Tex.Civ.App.—Corpus Christi 1971, no writ); *Abbott v. Earl Hayes Chevrolet Company,* 384 S.W.2d 782 (Tex.Civ.App.—Tyler, 1964, no writ).

On March 18, 1977, another hearing was held. At this time this Court announced its proposal to the effect that: the partial statement of facts and the exhibits were to be filed; the appellant was to file his brief setting forth his points of error and all relevant facts that he believed were necessary for a proper consideration of the appeal; appellee could file any reply and cross-points in its brief which it chose to bring before the Court; and that statements in either brief regarding facts of the case would be accepted as true by the Court unless refuted by the opposing party or were fully developed by evidence. See Rule 419, T.R.C.P. The attorneys for both parties agreed to the Court's proposed order, and subsequently filed their briefs and offered oral argument at the time the case was submitted on June 23, 1977.

At this point, appellant's motion to reverse and remand this case was still pend-

---

1. "It is a well established rule of law in our State that an appealing party is entitled to a statement of facts, and if through no fault of his own after the exercise of due diligence he is unable to procure such a statement of facts his right to have the cause reviewed on appeal can be preserved to him in no other way than by retrial of the cause." *State v. Ripke,* 426 S.W.2d 599, 603 (Tex.Civ.App.—Corpus Christi, 1968 writ ref'd n. r. e.). See authorities cited therein.

ing. It was clear, however, that remanding the case in order to obtain a statement of facts was a remedy available to appellant only if he showed that a material fact issue was unresolved by stipulations, admissions, exhibits, or testimony in the partial statement of facts, and that he had preserved his right to have such fact issue reviewed on appeal. Remand to secure a statement of facts was a remedy available to appellee if the case was not affirmed and if appellee preserved cross-points in his brief which required a statement of facts for proper appellate review.

Appellant Albright prayed for reversal and rendition, or for remand in the alternative. Appellee Texcellere prayed for affirmance, or if the judgment could not be affirmed, for remand. Appellee argues in its cross-points that, with an incomplete statement of facts, the case cannot be fully developed or reviewed, and therefore rendition against him would be improper without such a complete statement of facts.

The record available for review consists of the transcript, exhibits, partial statement of facts, and unchallenged facts set forth in the briefs. Our first question to decide is whether a complete statement of facts is needed for a proper determination of the validity of the judgment n. o. v. If the judgment n. o. v. can be reviewed without a complete statement of facts and if it was proper, we can affirm. If the judgment n. o. v. was improperly granted, it would then be necessary to determine the proper disposition of the appeal based on appellant's point of error and on appellee's cross-points.

Broker Albright sued purchaser Texcellere Corporation for two hundred and fifty thousand dollars ($250,000.00) real estate commission stipulated for in the real estate broker's contract between Albright and Texcellere. In addition Albright sued for the sum of three hundred and sixty thousand dollars ($360,000.00) for the loss of Albright's exclusive right of resale of the Petroleum Tower Building called for in the real estate broker's contract. Texcellere answered alleging that the consummation of the purchase of the Petroleum Tower Building by Texcellere was a condition precedent to Texcellere's brokerage obligations to Albright and that Texcellere was justified in refusing to purchase because, among other things, the building encroached onto property owned by the City of Corpus Christi. Albright replied that Texcellere entered into a supplemental agreement to accept title to the building if the Corpus Christi City Council issued a permit to use, (for the life of the building), that area of the City's property upon which the building encroached. Texcellere replied that it did not agree to accept the building with its encroachment even though a permit was actually issued by the City Council subsequently.

Trial was to the jury which answered the following special issue:

"Do you find from a preponderance of the evidence that purchaser Texcellere Corporation agreed to accept title to the Petroleum Tower property based upon the permit passed by the City Council? To which the jury answered, 'Yes'."

Appellant Albright contends that this single issue submitted to the jury was the controlling issue for the disposition of the entire case.

Appellant Albright argues here on appeal that the trial court erred in failing to grant his motion for judgment on the verdict because Texcellere was obligated to pay him the $250,000 brokerage commission based on the jury's answer to the special issue. Texcellere argues that the provision in a letter agreement between Texcellere and Albright with respect to payment is subject to an unfulfilled condition precedent to the effect that the sale must be consummated and only when Texcellere purchases the Petroleum Tower is the commission due. Therefore since Texcellere did not purchase the building, it argues that it is not liable for the commission. The relevant portion of the letter agreement provides as follows:

Texcellere Corporation is this date presenting to Petroleum Tower, Inc., a form of sales contract for the purchase by Texcellere of the above described property from Petroleum Tower, Inc. *Should*

*this sale be consummated and Texcellere purchases the above described property from Petroleum Tower, Inc., Texcellere will pay you [Albright] the sum of $250,000.00 as a real estate commission.* Said sum of $250,000.00 shall be evidenced by a note to you in that amount executed by Texcellere Corporation and dated at date of the closing of the proposed sale and shall bear interest at the rate of 9% per annum and interest shall be payable annually as it accrues. The principal of the note shall be payable on or before three years from its date, provided, however, that *should* Texcellere Corporation satisfy that certain note of even date herewith to Petroleum Tower, Inc., which is secured by a second lien evidenced by a deed of trust on the above described property, it will at that time pay you one-half of the principal then owing on said note. [emphasis added.]

■ Neither party contended that the above letter agreement was vague or ambiguous. Therefore the construction of the letter agreement is a question of law for the Court without the aid of parol evidence. *Steeger v. Beard Drilling, Inc.,* 371 S.W.2d 684 (Tex.Sup.1963); *Chaffe v. Murray,* 492 S.W.2d 680 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.); *O'Boyle v. DuBose-Killeen Properties, Inc.,* 430 S.W.2d 273 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.); *Struller v. McGree,* 374 S.W.2d 256 (Tex.Civ.App.—San Antonio 1964, writ ref'd n. r. e.).

We agree basically with Texcellere's contention that the language of the letter agreement, particularly the word "should", indicates that the parties agreed that a commission would be payable only in the event Texcellere consummated the sale and purchased the property. The provision for payment of a commission to Albright was subject to this condition precedent. *Sale v. Contran Corporation,* 486 S.W.2d 161 (Tex. Civ.App.—Dallas 1972, writ ref'd n. r. e.).

■ Generally, a condition precedent in a contract must be satisfied before a right can accrue to enforce the obligation made subject to the condition. *Burns v.*

*American National Insurance Co.,* 280 S.W. 762, 765 (Tex.Com.App.1926); *Sale v. Contran Corporation,* 486 S.W.2d 161, 164 (Tex. Civ.App.—Dallas 1972, writ ref'd n. r. e.); *Toland v. Kaliff,* 435 S.W.2d 260 (Tex.Civ. App.—San Antonio, no writ); *Perry v. Little,* 377 S.W.2d 765 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); *Cozby v. Edwards,* 203 S.W.2d 569 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n. r. e.). However, an unfulfilled condition precedent in a real estate brokerage contract will not defeat the broker's right to claim his commission if the broker has fully complied with all of his obligations under the terms of the contract and if the condition is not fulfilled due to the default of the broker's principal (in this case, Texcellere). The condition will then in law be excused and the broker can recover his commission. *Sale v. Contran Corporation,* 486 S.W.2d 161, 164 n. 7 (Tex.Civ. App.—Dallas 1972, writ ref'd n. r. e.); *McPherson v. Osborn,* 475 S.W.2d 804, 807 (Tex.Civ.App.—Amarillo 1971, no writ); *Peters v. Coleman,* 263 S.W.2d 639 (Tex.Civ. App.—Fort Worth 1953, writ ref'd n. r. e.); *Heath v. Huffhines,* 152 S.W. 176 (Tex.Civ. App.—Fort Worth 1912, no writ).

■ The supplemental agreement in which the jury found that Texcellere agreed to accept title to the Petroleum Tower property based upon the permit passed by the City of Corpus Christi, foreclosed the first argument advanced by Texcellere.

■ Next Texcellere argues that the contract of sale was subject to additional conditions precedent one of which is that its president McKellip failed to execute a personal guaranty agreement at closing. The contract referred to a letter of guaranty that had already been drawn and dated. The language of the agreement shows that the obligations of Petroleum Tower and Texcellere were not expressly conditioned upon McKellip agreeing to personally guarantee the obligation. The contract only purports to adopt by reference a prior written letter by McKellip to Petroleum Tower in which McKellip agreed to personally

guarantee the obligations to be assumed by Texcellere.

We have carefully considered all of the other arguments advanced by Texcellere and conclude that the April 26 contract of sale, the June 5 supplemental letter and the jury's answer to the special issue demonstrates that this particular excuse and others tendered by Texcellere did not justify its default. We do not agree with Texcellere's argument that this case should be remanded because a statement of facts is necessary to pass on the issue of whether Texcellere's default was justified or not. However, we do agree that Texcellere would be entitled to a statement of facts to pass upon the validity of some of Texcellere's crosspoints if it ever became necessary to pass on the merits of such points.

In counterpoint 12 Texcellere argues that the trial court's judgment should be affirmed as a matter of law because Albright failed to comply with the compulsory requirements of article 6573a § 28 Tex.Rev. Civ.Stat.Ann. (1969).[2] We agree. Section 28 provides in part:

> "At the time of the execution of any contract of sale of any real estate in this State, the Real Estate Salesman, Real Estate Broker, Real Estate Agent or Realtor shall advise the purchaser or purchasers, *in writing*, that such purchaser or purchasers should have the abstract covering the real estate which is the subject of the contract examined by an attorney of the purchaser's own selection, or that such purchaser or purchasers should be furnished with or obtain a policy of title insurance; and *provided further, that failure to so advise as hereinabove set out shall preclude the payment of or recovery of any commission agreed to be paid on such sale.*" [emphasis supplied]

Albright is not entitled to a commission unless his right to a commission is established in a writing that complies with Article 6573a § 28 Tex.Rev.Civ.Stat.Ann. (1969). The April 26 contract and all of the letters which Albright says are all of the relevant writings do not contain the written statutory requirements. The partial statement of facts shows that Albright admitted he did not provide a writing containing the section 28 statutory requirements. In addition, he has not suggested a valid excuse for failure to comply with the statute.

Texcellere contends that Section 28 of the above article covers the present transaction and as such entitles it to a judgment as a matter of law. The only bases which Albright suggests exempt him from the statutory requirements are as follows. Albright, relying specifically on article 6573a § 16(21) Tex.Rev.Civ.Stat.Ann. (1969)[3] (instead of Section 28), argues that: 1) failure to so advise a purchaser might be grounds to have a real estate license suspended but does not affect his right to seek a commission; and 2) he has fully complied with the statutory requirements because the April 26 contract of sale expressly provides that Texcellere shall be furnished with a policy of title insurance.

■ Albright's arguments lack merit. First Section 28 expressly precludes the payment of or the recovery of *any* real estate commission agreed to be paid if the broker fails to supply the required written information. *Jones v. Del Andersen and Associates*, 539 S.W.2d 348, 350 (Tex.Sup. 1976). Section 16 gives the commission the power to suspend or revoke the broker's license. Section 28 is therefore not limited by the additional sanctions imposed by Section 16(21) of Art. 6573a. In some circumstances both sections would be applicable. However, in this suit, only Albright's right to recover a real estate commission under Section 28 is involved.

■ Albright's second argument is controlled by *Jones v. Del Andersen and Associates*, supra. There the Supreme Court stated:

---

2. Article 6573a has been amended since this case arose. Acts 1975, 64th Leg., p. 533, ch. 216. The same substance of Section 28 is now contained in Section 20.

3. The substance of Section 16(21) is now contained in Section 15(4)(u).

"We assume that Section 28 was enacted for the protection of real estate purchasers. By requiring the realtor to notify such persons of the advisability of investigating the seller's title, the risk of purchasing a worthless or clouded title is reduced. . . . The Legislature could reasonably conclude that the most effective means of protecting prospective purchasers is to deny the realtor his commission any time he fails to supply the required information. Thus the statute uses the words 'any commission.'

\*   \*   \*   \*   \*   \*

In order for Section 28 to serve its intended purpose, it must apply in all cases. To hold otherwise would render the statute ineffectual, by permitting realtors and sellers, in instances where title problems exist, to structure the transaction so as to avoid the requirements of the statute. We do not believe that the Legislature intended such a result. Only where the realtor is wrongfully deprived of the opportunity to comply may he still recover his commission. See *Knight v. Hicks*, 505 S.W.2d 638 (Tex.Civ.App.1974, writ ref'd n. r. e.)."

Albright concedes that his compliance, if any, with section 28 must be found in the April 26 contract of sale. The following is the only reference to title policies or abstracts in the April 26 contract:

"3. Seller agrees to furnish Purchaser a policy of title insurance in the face amount of Three Million Two Hundred Thousand Dollars ($3,200,000.00) issued by U.S. Life Title Company or other reputable title company, in the customary form and containing only (1) the usual exceptions to title, such as rights of parties in possession, survey, taxes, tenants leases, restrictive covenants and apparent easements, etc., and (2) the lien and encumbrances to be assumed by Purchaser and reserved by Seller pursuant to Paragraphs 2(b) and 2(c) above, which policy shall be issued immediately upon closing of this transaction and the filing of Purchaser's deed for record."

The contract does not advise the purchaser Texcellere in writing that it has certain statutory rights. The statute as it is written requires that this information must be furnished to the purchaser at the time of the execution of the contract. Our Supreme Court said:

"We recognize that such a statute, construed as it is intended, can lead to harsh results in individual cases. For example, it appears that in the present case the purchasers did in fact seek legal advice concerning the seller's title, even though Andersen had failed to so advise them. However, when we have determined the legislative intent expressed in unambiguous language, our function is not to question the wisdom of the statute. *In the absence of constitutional infirmities, we must apply it as written.*" (emphasis added) *Jones v. Del Andersen and Associates*, supra.

At the hearing on Motion to Reverse and Remand it was agreed that if either party raised a material disputed fact issue in its brief contending that certain evidence was received during the course of the trial, we would by necessity, consider such disputed statements as requiring reversal and remand. Albright does not refute the statement contained in Texcellere's brief regarding his testimony contained in the partial statement of facts that Albright admitted he did not give the statutory requirements in writing to Texcellere. None of the writings introduced into evidence contain the statutory requirements and Albright does not suggest such a writing exists. Texcellere's brief states that Albright was present at the signing of the April 26 contract of sale between Texcellere and Petroleum Tower. Albright does not refute this statement. In addition Albright does not suggest or imply that he was wrongfully deprived of the opportunity to comply with the requirements contained in Section 28 of Art. 6573a.

We therefore conclude from the record and the statements contained in the briefs that the evidence is conclusive that Albright did not inform the purchaser of the

statutory requirements contained in Section 28. There is no evidence in all the writings pertaining to the contract of sale that Albright informed Texcellere in accordance with Section 28. We hold that Albright's suit for his commission is barred by Section 28, Art. 6573a. *Jones v. Del Andersen & Associates*, supra.

Albright also contends he was entitled to judgment on the jury's verdict for damages for loss of the exclusive right to resell the Petroleum Tower. The relevant portion of this part of the April 5 brokerage contract states:

> "As further consideration for your negotiations of said sale and upon closing of said sale Texcellere . . . hereby gives you *the exclusive right to sell the above described property when Texcellere desires to sell the same* and Texcellere agrees to pay you six percent (6%) real estate commission for your services as realtor in any such sale by Texcellere. Should such property be sold by someone other than yourself you agree to split your commission with such party." [emphasis supplied]

Pursuant to this provision, Albright claims he is entitled to damages in the amount of 6%, or in the alternative 3%, of the estimated resale value of the Petroleum Tower and suggests that we can determine the amount to which he is entitled.

■ Generally when a broker has contracted for the exclusive right to sell property and is ready, willing, and has performed his part of the contract, and his principal wrongfully breaches the contract thus denying the broker the opportunity to perform, the broker is entitled to recover as damages the amount which under the contract he, presumably, would have earned had his right been respected. *Park v. Swartz*, 110 Tex. 564, 222 S.W. 156 (1920). In such instances the broker's cause of action is not to recover the commission promised to him but to recover damages for the principal's breach of the contract. This exclusive contractual right to resell the building had some value to Albright. The broker is ordinarily entitled to recover the reasonable prospective profits he would have earned but for the breach. *Sunshine v. Manos*, 496 S.W.2d 195, 200 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.); *Dowd More Co. Realtors v. McDonald*, 494 S.W.2d 282 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ); *McDonald v. Davis*, 389 S.W.2d 494 (Tex.Civ.App.—Houston [1st Dist.] 1965, no writ). Prima facie, that profit could be represented by the stipulated commission in the brokerage contract. (See authorities above cited). Where the brokerage contract specifies a percent commission payable to the broker but does not otherwise specify upon what sum the commission is to be computed, the commission is to be computed upon the gross sales price of the property. *Peters v. Coleman*, 263 S.W.2d 639, 642 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n. r. e.) See authorities cited therein.

■ Although Albright requested a special issue asking the jury to find the estimated sales price of the Petroleum Tower, the trial court refused the special issue and no other special issues were submitted to the jury relating to Albright's measure of damages. Albright did not file a motion for a new trial complaining of the trial court's failure to submit this special issue nor does he mention the lack of this special issue in his motion for judgment. Albright has not perfected any complaint to this Court regarding the trial court's failure to submit special issues on the lost profits. He has therefore waived his right to appellate review of this point. *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960).

■ ■ Albright would ordinarily be entitled to a judgment if the material allegations of his cause of action were proved either by a jury verdict or by undisputed evidence. *American Trading & Production Corp. v. Phillips Petroleum Co.*, 449 S.W.2d 794, 798 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.). Although there is no jury issue to support his claim for damages, Albright contends that the estimated resale value of the Petroleum Tower was conclusively established to be six million dollars ($6,000,000). To support this contention, Albright's brief states that he testified

without objection to this value and that Texcellere in its pleadings admitted that the building had a resale value of $6,000,000 because Texcellere in a cross action sought damages for alleged lost profits based on that value. Texcellere's brief does not directly refute that the resale value of the building was $6,000,000, but Texcellere does contend that the price is purely speculative and that the contract is of indefinite duration and is therefore unenforceable. Be that as it may, prima facie, the profit in this case could be 6% of the gross sales price of Petroleum Tower. Although there was evidence that the Petroleum Tower had a resale value of $6,000,000, which was some evidence of Albright's prospective profits, this testimony alone does not conclusively establish the resale value of Petroleum Tower or the profit Albright would have earned or the actual damage he suffered. For instance, the record contains a stipulation made by Albright's attorney to the effect that on December 26, 1974, (a subsequent date) Albright sold the Petroleum Tower to another purchaser for the sales price of $4,100,000 and that Albright received a $130,000 commission on that sale. This would be some evidence that the resale value of the Petroleum Tower was less than $6,000,000 as contended. There is no question but that there is a fact issue on the amount of damages caused by Texcellere's breach of the contract.

Albright is not entitled to a judgment on the verdict for the damages he sustained by the loss of the exclusive right to resell the building because the damages have not been established as a matter of law so as to permit a reversal and rendition. Since appellant did not preserve error for a reversal and remand, we are also required to affirm this portion of the trial court's judgment.

The Rules of Civil Procedure clearly evidence a policy of economy and efficiency in presenting a proper record to the appellate court for review. Rule 370, T.R. C.P., specifically calls for limiting records to the questions relied on for reversal; Rule 377(b) directs the omission of matters from the statement of facts which are not essential to the decision of the questions presented; Rule 377a permits a party to induce the opposing party to accept an abbreviated transcript or statement of facts by filing a statement of the points on which he intends to rely; and Rule 378 permits the parties to file an agreed statement of facts as a part of the transcript. A record made unnecessarily lengthy by the inclusion of irrelevant material is specifically disapproved by the Rules of Civil Procedure. (See also Rules 372(*1*), 377(e), and 382.)

The appellant's right to a statement of facts is not absolute. If a statement of facts is not needed, as in this case, a retrial for the sole purpose of obtaining a statement of facts violates the intent and the literal wording of the Rules.

Appellant's motion to reverse and remand is denied. The judgment of the trial court is affirmed.