**CITY OF PINEHURST, Texas, Appellant,**

v.

**SPOONER ADDITION WATER COMPANY
et al., Appellees.**

**No. 6879.**

Court of Civil Appeals of Texas.

Beaumont.

Feb. 15, 1968.

Rehearing Denied Feb. 28, 1968.

Keith, Mehaffy & Weber, Beaumont, for appellant.

Sexton & Owens, Orange, for appellees.

HIGHTOWER, Chief Justice.

On October 10, 1957, the City of Pinehurst adopted a franchise granting to Spooner Addition Water Company the right to distribute water in a portion of said City at a time when the City had no municipally owned facilities. On September 29, 1964, suit was instituted by the City to procure a declaratory judgment that the offer of the franchise to the water company had never been accepted by said company and that the City had no obligations to it under the provisions thereof. The water company filed a cross-action wherein it sought the recovery of the market value of its old water distribution system. Upon the basis of favorable jury findings for the water company, judgment was rendered against the City for $29,000.00 as the "market value" for the old system. From said judgment, the City has duly perfected its appeal. The City of Pinehurst will be referred to as "the City" hereinafter, and the Spooner Addition Water Company will be referred to as "the water company" or other appropriate designation.

By its first point of error, the City contends that the offer of a franchise never ripened into a contract; hence, there was no obligation on the part of the City to purchase the old water distribution system. Under this point of error, the City correctly points out that the company failed to post bond as required under the contract; it did not give notice to the State Health Department of the water system and main, nor were said plans approved as required by Article 4477–1, Sec. 12(a) and Sec. 12(b), Vernon's Ann.Rev.Civ.St.; it engaged in the furnishing to the public of drinking water, for which a charge was made without having the same done under the supervision of a competent water works operator in violation of Article 4477–1, Sec. 11(a), R.C.S.T.; it knowingly furnished the public with drinking water which had been contaminated by rust and other foreign materials in the pipes; it failed to comply with the terms and provisions of said ordinance in that it did not maintain said water distribution system in accordance with the rules and regulations of the State Health Department and particularly Rule E 1.00, Sec. (c) and Sec. (i).

The City simply argues, that by reason of the established aforesaid acts and omissions by the water company, that said company never complied with the terms and provisions of the offer of the franchise and, therefore, a contract never came into existence. That it cannot be contended that there was any acceptance of the offer so as to ripen into a contract. It urges, that by reason of the aforesaid acts and omissions, there was no lawful performance ·by the water company, that the attempted performance by said company was in violation of State law enacted for the protection of the public health. Its purported performance was no performance at all. In substance, the City contends that because illegal actions were committed by the company in its performance of the contract, that there was no performance, and that no contract came into existence. We do not agree.

■ The contract itself was clearly a legal one. The fact that all elements of it were not legally performed by the company does not detract from its legality when first entered into by the parties. The law is well established, as stated by our Supreme Court in Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146:

"A contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner. Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808; 12 ·Am.Jur., p. 647, Sec. 153. According to the foregoing settled rules, the contract by which the parties associated themselves together, as alleged in the petition, must be held valid and not illegal."

"A contract is not rendered illegal simply because in carrying it out illegal acts are committed. Erminger v. Daniel, Tex.Civ.App., 185 S.W.2d 148."

By its second point of error, the City contends that the water company, having breached the terms of the franchise by its aforesaid illegal actions and omissions, the City was relieved of any obligation to purchase the old water distribution system.

■ We find no merit in such contention. In answer to Special Issue No. 2, the jury found that substantial compliance of the contract by the water company was waived by the City by acts or conduct evidencing an intent on the part of said City not to insist upon performance. This finding by the jury has not been attacked by the City in its brief, hence, we overrule such point of error.

■ Moreover, the record reflects that as a matter of law the City waived such contentions. There is no evidence of a single act on the part of the City from October 10, 1957 until September 26, 1964 that was in any way inconsistent with a belief that they considered the contract to be subsisting, nor did they, by any act or conduct, indicate any dissatisfaction with the performance of the company or any intention to rescind or repudiate the contract. To the contrary, every expression of the City was to the effect that they regarded the contract as valid, and that they intended to perform their obligation to buy the water works at the appointed time. Thus, the record shows that the offer of contract by the City was not an offer of an illegal contract; that the water company accepted the offer by beginning and continuing to distribute water to the City; that the City accepted performance on the part of the water company for a period of seven years without complaint, and with knowledge of the alleged breaches of the contract by the water company; that every act of the City was consistent with their belief in the validity and subsistence of the contract, and no act of the City was inconsistent therewith; that both the City and the company construed the contract to be valid and binding upon both parties, and by their acts and conduct

expressed their intentions and their construction of the contract; that the City has waived its right to insist upon performance, to rescind or repudiate the contract, to deny the validity of the contract, or to seek a forfeiture of the company's contractual rights. Cozby v. Edwards, Tex. Civ.App., 203 S.W.2d 569; Sinclair Refining Company v. Costin, Tex.Civ.App., 116 S.W.2d 894; 17A C.J.S. 700–701.

■ By its third point of error, appellant urges that the court misconstrued the contract, if any, between the parties with reference to the determination of the market value of the old water distribution system. In such connection, it refers to the following portion of the franchise:

"The City of Pinehurst, Texas, agrees that if it becomes engaged in the distribution of water through its own system of pipes * * * then and in that event only said City of Pinehurst, Texas agrees that it will then purchase from J. H. Spector said Spooner Addition Water Co. at the *then* market value of said Co. * * *" (Emphasis ours)

The issue submitted to the jury by the court, and upon which the judgment was based, inquired of the market value of the system and contained a generally approved definition of market value, but contained this language which represented the interpretation of the court thereon:

"You are further instructed that in arriving at such figure [market value] if any, that you are not to consider in any manner the construction or operation of a water works by the City of Pinehurst."

It is urged by the City that the final "then" in the portion of the franchise just above quoted can mean only one thing: the market value will be that which may be determined to exist after the hap-

pening of the contingency giving rise to the purchase, viz., the operation of its own system. It can have no other meaning under the clear language chosen by the parties. There is no obligation to purchase until the City's own system is in operation and the obligation after the operation of its own system is to purchase as the *then* market value.

We do not agree with the City's contentions on this point, and we hold that the trial court properly restricted the jury in arriving at the question of market value by the foregoing instruction. It is agreed by all parties, and the record so reflects, that if the contract is to be construed as the City urges, that the water works system would have no value at all. In our opinion, the "then market value" relates to the time and not to the occurrence of an event. It means, the City will pay the water company the market value of such water company, "then" or, at the time it is engaged in the distribution of water. It does not mean that the market value itself will be determined for the purpose of such franchise by considering the fact that the city is "then" engaged in the water business itself.

If the City of Pinehurst had intended for this provision of the franchise to have the meaning it now contends, it would have been a simple matter to provide that it should pay the "salvage value", for in reality, that is the effect of what it contends. There could be no willing buyer of a water system with the City of Pinehurst in competition, and with the right to buy at salvage value.

■ A written instrument, not alleged to be ambiguous, must be construed so as to carry out the primary intentions of the parties. It must be considered as a whole and given its reasonable, natural and probable meaning. Brown v. Brown, Tex.Civ.App., 245 S.W.2d 995, 997. The City's third point of error is overruled.

By its fourth and fifth points of error, appellant contends that there was no evidence or that the evidence was insufficient to support the jury finding of market value of the old water distribution system. These points are overruled.

▮ Under these points of error, the City primarily objects to the fact that the court permitted Mr. Kohler, a witness for the water company, to give his opinion of market value before the jury by testifying to the replacement cost of the system and then giving his opinion of its depreciated value. We think the court properly allowed the testimony and that it was sufficient to support the finding of the jury. A proper predicate was layed for the introduction of such evidence by proof that the old water system had no market value as that term is commonly known. Mrs. Jimmerson testified as to the gross receipts, the expenses and the net profit of the water works for the years 1961, 1962 and 1963, the gross sales totaling $19,356.96, the total expenses $4,077.32, making the net profit for the three year period $15,279.64, or roughly, the net income during that period of time of $5,000.00 per year.

Mr. Kohler testified that the cost of replacement of the system as of 1964 was $42,604.75, and that its depreciated value as of 1964 was $28,943.59. He was experienced in the buying and selling of water systems. He testified that if a water system were netting $5,000.00 per year that the value of the investment would be twenty times the annual return, or $100,000.00. He then testified that based upon the information submitted to him for consideration that his opinion of the fair market value of the Spooner Addition Water Company in September, 1964, was $28,943.59. Mr. Kohler further testified that he was familiar with how to determine market value, that one of the recognized methods that he had used for such was by determining the cost of replacement less depreciation.

Judgment affirmed.