CITY OF PINEHURST, Texas, Petitioner,

v.

SPOONER ADDITION WATER COMPANY
et al., Respondents.

No. B–840.

Supreme Court of Texas.

Oct. 2, 1968.

Rehearing Denied Oct. 30, 1968.

Keith, Mehaffy & Weber, Quentin Keith, Beaumont, Milton Regan, Orange, for petitioner.

Sexton, Owens & Wingate, Paul R. Owens, Orange, for respondents.

SMITH, Justice.

The City of Pinehurst, Texas, hereinafter designated as the City, filed this suit seeking a declaratory judgment under the provisions of Article 2524–1, Vernon's Annotated Civil Statutes of Texas, against Spooner Addition Water Company et al, hereinafter designated as the Company. The City alleged that a justiciable controversy existed by virtue of the Company's failure to comply with the provisions of a certain ordinance dated October 10, 1957, offering a franchise to the Company for the distribution of water for domestic, commercial or industrial purposes in Spooner Addition No. 1, Spooner Addition No. 2, and Weaver Addition to the City of Pinehurst. The City alleged that the Company failed to perform its agreement, as provided in Section 4 of the ordinance, to improve its "existing water system by replacing all of its existing water lines with 2″ lines, * * *" and to furnish a performance bond as provided in Section 11 of the ordinance. For these reasons the City sought the judgment of the Court declaring the ordinance of no force and effect.

The Company's answer and cross action presents the contention that the ordinance of October 10, 1957, became effective immediately, and that the Company had performed all obligations in accordance with the terms of the ordinance. The Company further alleged, in the alternative, that the City had waived any alleged breach of the ordinance.

The Company further alleged that Section 10[1] of the ordinance provided that if, at any time during the period of ten (10) years from October 10, 1957, the City became engaged in the distribution of water through its own pipes in the territory described in the ordinance, "then and in that event only said City of Pinehurst, Texas, agrees that it will purchase from J. H. Spector [Company] said Spooner Addition Water Co. at the then market value of said Co. * * *" The City did construct and place in operation a new water line in 1964, but failed to purchase the company plant in accordance with the agreement. At the same time, the City also gave notice of the termination of the Company franchise.

A jury, in answer to special issues, found that the Company had not substantially complied with the terms of the ordinance, but that substantial compliance was waived by the City; the City accepted benefits under the provisions of the franchise after it had acquired knowledge of the existence of the breach by the Company; and the market value of the Company as of September 26, 1964, was $29,000.00. The trial court entered judgment in favor of the Company for $29,000.00. The Court of Civil Appeals affirmed. 424 S.W.2d 485.

The only question for our consideration is whether the trial court properly determined the market value of the Company water line and equipment. We have concluded that it did not. Therefore, the judgments below are reversed and judgment is here rendered that the Company take nothing.

We agree with the parties that the contractual provisions contained in Section 10 of the ordinance are unambiguous. The specific question is: What did the parties intend the term "market value" as used in the contract of sale to mean? The Company contends that it was the intention of the parties that the City was to pay the market value at the time the City placed its own water lines in operation, which was on September 26, 1964, without taking into consideration the City's new water system. The trial court adopted this view, and, in submitting the question to the jury, gave the usual definition of "market value."[2] However, in connection with the definition, the court instructed the jury "that in arriving at such figure [market value], if any, that you are not to consider in any manner the construction or operation of a water works by the City of Pinehurst." The City's objection to this special instruction was overruled. The City contended that on this issue it was entitled to an instructed verdict. Its motion for instructed verdict was overruled. The basis for the motion for instructed verdict was that the City was under no obligation to purchase from the Company until it started

---

1. *Section 10.* Said City of Pinehurst, Texas, agrees that if it becomes engaged in the distribution of water through its own system of pipes for domestic, commercial or industrial purposes in said Spooner Addition No. 1, Spooner Addition No. 2, and Weaver Addition in the City of Pinehurst, Texas, according to the map or plats of said Additions of record in the Map or Plat Records of Orange County, Texas, in Volume 2, Page 80, Volume 2, Page 95, and Volume 2, Page 90, respectively, those Additions in which Grantee herein is given authority to operate its water system, then and in that event only said City of Pinehurst, Texas, agrees that it will purchase from J. H. Spector said Spooner Addition Water Co. at the then market value of said Co., said market value to be determined by a committee of three (3) persons to be appointed as follows: One person to be appointed by J. H. Spector, one person to be appointed by the City of Pinehurst, Texas, and the third person to be appointed by both said apointee of J. H. Spector and said apointee of the City of Pinehurst, Texas.

2. You are instructed that the definition of market value, as used in this issue, is the price that Spooner Addition Water Company would bring in cash when offered for sale by one who desires to sell, but is not obligated to sell, and is bought or purchased by one who desires to purchase it, but is under no necessity of doing so. It is the amount that could be obtained at private sale and not at a forced sale.

selling water through its own lines; in that event only, the City agreed to pay the *then* market value, which according to the City, was the *then* market value of the Company. Further, there was no evidence of such value. The Court of Civil Appeals has held that " 'then market value' relates to the time and not to the occurrence of an event." We agree with the City.

It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the Court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex. Sup.1962). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). See generally: 3 Williston on Contracts § 610 (1936); Restatement of the Law of Contracts § 230 (1932). Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. As said in the Restatement, § 230, supra, "[the] standard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean." The Company argues that the fact, alone, that the parties used the term "market value" establishes clearly that it was the intention of the parties to fix a time for the establishment of the "then market value" rather than the occurrence of an event, which, in this case, was when and if the City became "engaged in the distribution of water through its *own* pipes." Emphasis added. In the case of Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex.Sup.1963), § 230 of the Restatement was cited as being a proper pronouncement of the general rule of the law of contracts which should govern the Court in its effort to arrive at the intention of the parties. However, we did not analyze the Restatement there, which, perhaps, is necessary here for a better understanding of the interpretation we have given the contract now under consideration. Comment B under the Restatement, § 230, reads:

> "Where a contract has been integrated the parties have assented to the written words as the definite expression of their agreement. In ordinary oral negotiations and in many contracts made by correspondence the minds of the parties are not primarily addressed to the symbols which they are using, but merely to the things for which the symbols stand. Where, however, they integrate their agreement they have attempted more than assent by means of symbols to certain things. They have assented to the writing as the expression of the things to which they agree, therefore the terms of the writing are conclusive, and a contract may have a meaning different from that which either party supposed it to have."

Williston on Contracts § 610, supra, cited in Ohio, supra, should also be given further emphasis. In drawing a contrast between contracts of which no memorial is made and no writing required and contracts in writing such as we have here, Williston states that "though Courts say they are seeking the intention of the parties, the assertion is even more emphatic that this intention can be found only in the expressions of the parties in the writing. In effect, therefore, it is not the real intent but the intent expressed or apparent in the writing which is sought." Williston goes on to say, however, that "this does not limit the Court to the literal meaning of

the words, for while omitted restrictions will not be implied in otherwise clear and general promises, yet the terms of the contract may themselves show such an intent on the part of the parties. * * * Likewise, the Court will consider the characterizing circumstances that surround the execution of a contract and where the terms are still not clear the Court will hear oral testimony 'to ascertain the intent of the parties as expressed by the language used'." What is said in the Restatement § 230 and Williston § 610, is not out of harmony with the holdings of this Court that all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. See Smith v. Liddell, 367 S.W.2d 662 (Tex.Sup.1963); Ohio Oil Company v. Smith, supra.

■■ Where a question relating to the construction of a contract is presented, as here, we are to take the *wording* of the instrument, *consider the same in the light of the surrounding circumstances,* and apply the pertinent rules of construction thereto and thus settle the meaning of the contract. Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex. Sup.1963). As above indicated, the issue is here joined between the parties. The contract itself reflects that the City contemplated placing in operation an entirely new water system separate and apart from the Company system. There is nothing in the contract, either express or implied, which shows any intention of the parties that the Company water system was to be used in connection with the operation of the City's new water lines. Prior to the execution of the franchise ordinance and the acceptance thereof by the Company, the attorney for the Company requested that the following paragraph be added to the franchise: "In the event the City of Pinehurst becomes engaged in the distribution of water through its own system of pipes, that it will purchase from J. H. Spec-

tor [Company] the Spooner Addition Water Company at the *book value* of such Company." Emphasis added. The reason assigned in the letter for making such request was that unless the requested clause was included in the contract the Company would be unable to secure the credit necessary to improve the water system. The City's attorney, in reply by letter, declined to agree to the Company's proposal; but the parties subsequently agreed to add such a paragraph using "then market value" rather than "book value." It is clear from all of the language used in the contract, considered in the light of the surrounding circumstances, and the pertinent rules of construction heretofore stated, that it was not the intention of the parties for the market value to be determined without taking into consideration the City's new water lines.

Further, in section 10 of the franchise agreement, the words "then and in that event only" set forth a condition precedent, the occurrence of which must take place before the City's duty to perform its promise arises. See Restatement of the Law of Contracts § 250(a) at 359, supra. The use of the word "then" as an adverb clearly indicates the time for which payment by the City is to be made, if at all. But what is to be paid? The "then market value." The use of the word "then" as an adjective indicates market value immediately following the occurrence of the condition precedent, i. e., market value at the time the City "becomes engaged in the distribution of water through its own system of pipes. * * *" It is agreed by both parties that the market value of the old system, after completion of the new system, is nominal.

Since no evidence was introduced of the market value as agreed upon, the judgments of the courts below are reversed and judgment rendered that the Company take nothing.

GRIFFIN, J., notes his dissent.