**BALBOA INSURANCE COMPANY, Appellant,**

v.

**K & D AND ASSOCIATES, Appellee.**

No. 19924.

Court of Civil Appeals of Texas, Dallas.

Oct. 3, 1979.

Rehearing Denied Nov. 9, 1979.

W. Ted Minick, Alan Wilson, Winstead, McGuire, Sechrest & Trimble, Dallas, for appellant.

James A. Knox, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellee.

Before AKIN, ROBERTSON and CARVER, JJ.

AKIN, Justice.

This is an appeal by Balboa Insurance Company from an adverse summary judgment rendered against it on a surety bond and in favor of the obligee on the bond, K & D and Associates. K & D and Associates, a general contractor, sued P & L Construction Enterprises, Inc., its framing and carpentry subcontractor, and P & L's surety, Balboa, for losses sustained by K & D when P & L abandoned the job. Judgment was entered against P & L for the total amount of the loss and against Balboa to the extent of its bond. Only Balboa appeals.

On appeal, Balboa contends that the trial court erred in rendering summary judgment as to liability[1] because: (1) the language of the bond and documents relating thereto are ambiguous with respect to the bonded obligation, thus creating a fact issue as to the intent of the parties; (2) there was a mutual mistake in the language of the bond; (3) Balboa has been discharged under its bond because of material alterations to the bonded subcontract; (4) no default occurred under the letter of intent, which K & D contends was the bonded indebtedness; and (5) Balboa has been discharged by reason of a novation arising from the execution by K & D and P & L of two subcontracts after the letter of intent which K & D asserts is the bonded indebtedness. Because we find no merit in these contentions, we affirm.

The relevant facts are undisputed. K & D had a contract with the United States Air Force to build two hundred houses at Sheppard Air Force Base. On November 22, 1974, K & D and P & L Construction Enterprises signed a document designated "Letter of Intent" by which P & L agreed to perform the carpentry subcontract work. This document consisted of five pages and set forth in some detail the work to be done. The "Letter of Intent," contemplated another contract for the work to be executed since it provided: "It is agreed that the printed form in blank hereto attached, the printed terms and conditions of which is acceptable, is the form to be used in the preparation of the subcontract, and that special clauses will be inserted as indicated by the attached sheet or sheets." The sheets were a formal A.I.A. contract form. It also stated: "The undersigned agree to execute a subcontract in accordance with this proposal."

This letter of intent also required P & L to obtain a combination payment and performance bond in the amount of $378,200. Although P & L sought a bond in this sum, it was only able to obtain a bond for $200,000 from Balboa naming P & L as principal and K & D as obligee. This was the maximum amount permitted by Balboa to be written by the insurance agency through which P & L obtained the bond. The bond in the amount of $200,000 was issued and delivered to K & D on November 26, 1974,

---

1. The parties stipulated as to damages.

four days after the "Letter of Intent" was signed. With respect to its obligations, the letter stated:

> That the above bound Principal (P & L) has entered into a contract with K & D and Associates dated November 22, 1974, to do framing and carpentry work in connection with Federal Contract No. F41612 75 90011.

Thereafter, on December 26, 1974, K & D and P & L entered into two formal subcontracts (using the blank printed form attached to the letter of intent), each of which required P & L to perform the carpentry work on 100 units for a lump sum of $189,100. Thus, taken together, each subcontract required P & L to do the work on 200 houses for $378,200, as set forth in the "letter of intent." P & L commenced work on the 200 houses but defaulted and left the job on July 14, 1975. K & D made demand on Balboa, as P & L's surety, to complete the performance of the obligations undertaken by Balboa in accordance with its bond on November 26, 1974. Balboa refused and K & D completed the project at a loss to it in excess of $200,000, the penal limit of the bond. This litigation ensued.

## AMBIGUITY

Balboa asserts that the language of the letter of intent was ambiguous, creating a material fact issue as to the intent of the parties. However, it did not raise this point in its response to K & D's motion for summary judgment. We cannot reverse a summary judgment on issues not presented to the trial judge by written motion for summary judgment, answer or other response. Tex.R.Civ.P. 166–A.

Moreover, as we read the letter of intent and the bond, there is no ambiguity. The letter of intent, dated November 22, 1974, sets out in tedious detail the carpentry and framing work to be performed on 200 housing units. The bond specifically refers to the contract between K & D and P & L dated November 22 and to K & D's government contract number. It is undisputed that no agreements other than the letter of intent between K & D and P & L were executed on November 22.

The construction of an unambiguous written instrument is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex. 1968). The intent of the parties is determined by applying an objective standard to the content of the writing. The supreme court in *City of Pinehurst* stated:

> [the] standard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, *other than oral statements by the parties of what they intended it to mean.* 432 S.W.2d at 518. [Emphasis added].

Balboa has adduced deposition testimony as to the subjective intent of the parties in executing the bond and letter of intent. This testimony does not raise a fact issue as to the intent of the parties and, indeed, is inadmissible under the parol evidence rule. Since the writing is unambiguous, the intent of the parties is objectively determined from its content, applying the *Pinehurst* standard. Deposition testimony of subjective intent is irrelevant and cannot raise a fact issue as to the intent of the parties in executing the bond and letter of intent. We find no merit in Balboa's contentions as to ambiguity. Even if meritorious, we are required to reject them because they were not presented to the trial judge in response to K & D's motion for summary judgment.

## MUTUAL MISTAKE

Balboa next contends that it raised a material fact issue on its affirmative defense of mutual mistake, precluding summary judgment. Even though it was the non-movant, Balboa, who had the burden of raising a fact issue on all elements of its affirmative defense, *Torres v. Western Casu-*

*alty and Surety Co.*, 457 S.W.2d 50, 53 (Tex. 1970), ". . . in order for the affirmative defense of mutual mistake to be sustained, the defendant must raise fact issues showing that both parties were acting under the same misunderstanding of the same material fact." *Newson v. Starkey*, 541 S.W.2d 468, 472 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). "A mutual mistake of fact occurs where the parties have a common intention, but the written contract erroneously reflects that intention due to a mistake on the part of both parties in writing the agreement." Id.

▆▆▆ Balboa's mutual mistake defense was that the actual agreement was to bond the framing and carpentry work on 100 housing units rather than 200 units. In this respect Balboa asserts that it was only through some inadvertence that the written bond was not limited to 100 units. In order to establish this affirmative defense by proper summary judgment evidence, Balboa had to establish that the agreement between P & L and Balboa was to bond the work on 100 units and that K & D knew of this agreement. The latter element must be established because a secret understanding between the principal and the surety cannot alter the legal effect of the bond. *Lloyds Casualty Insurer v. Farrar*, 141 Tex. 497, 174 S.W.2d 302, 305 (1943). Balboa attempts by deposition testimony of Albert Gray, one of the insurance agents who issued the bond, to raise a fact issue as to K & D's knowledge that the bond was to cover only 100 units. Gray testified that he talked by telephone to someone at the K & D job site *who he thought was the project supervisor for K & D.* Gray testified that he issued the bond only after obtaining assurance from this individual that a separate subcontract covering the first 100 units would be issued in the amount of $190,000. Even if taken as true, Gray's testimony fails to establish knowledge on the part of K & D because it does not show that Gray had personal knowledge that the individual with whom he spoke had authority to act for K & D. In order to support or oppose a motion for summary judgment, an affidavit must be made on personal knowledge of the affiant competent to testify to matters contained therein. Tex.R.Civ.P. 166–A. Mere conclusions are insufficient to raise a fact issue that precludes summary judgment. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562 (1962). We conclude, therefore, that Balboa has failed to raise a fact issue as to the existence of a mutual mistake in the execution of the bond.

## THE BONDED OBLIGATION

Next, Balboa contends that the bonded obligation was the first subcontract covering work on 100 housing units, and that its obligation as surety was discharged by expansion of the obligation to cover 200 units. We cannot agree and hold that the bonded obligation was the framing and carpentry work on all 200 housing units, as set forth in the "letter of intent." Thus, it is unnecessary to discuss Balboa's contentions that it was released by material alteration to the first 100 units subcontract.

▆▆▆ The proper standard of construction of the bond and letter of intent is the interpretation of a reasonable man with knowledge of operative usage and surrounding circumstances. *City of Pinehurst*, 432 S.W.2d 518. The letter of intent set out in great detail the carpentry and framing work. It also contained a provision that blank copies of the standard form subcontract to be executed were attached, thus incorporating the printed provisions of those form contracts into the letter of intent. Both parties agreed to execute the attached forms. Thus, nothing remained uncertain with respect to the contract between K & D and P & L and, indeed, it was complete and enforceable because nothing remained that was not covered by the letter of intent. The bond unequivocally refers to the agreement between K & D and P & L dated November 22, 1974, the date of execution of the letter of intent, and to the contract number of K & D's government contract. Both documents contemplate work on 200 housing units. Applying the rule of *City of Pinehurst*, we construe the bonded obligation to be the letter of intent rather than the first 100 units subcontract.

### CONSTRUCTION OF THE LETTER OF INTENT

Balboa asserts that the letter of intent required only the execution of subcontracts, not the performance of carpentry and framing work. Since P & L in fact executed the subcontracts, Balboa claims no event of default occurred under the letter of intent and thus it is not liable to K & D on the bond. This construction of Balboa's obligation is untenable. It flies in the face of a reasonable construction of the bond to assert that the bonded obligation was the execution of a subcontract. In considering the circumstances surrounding the execution of the bond as authorized by *Pinehurst*, we judicially notice that the purpose of a surety bond for a construction subcontractor is to provide for performance of the subcontractor's construction obligation if the subcontractor defaults. If Balboa's interpretation of the letter of intent was adopted, then Balboa's obligation under the $200,000 surety bond was discharged when P & L signed the subcontract. Thus, K & D would have to rely solely on the credit of P & L to perform its obligation under the subcontract and the bond would fail in its essential purpose. Construing the letter of intent and bond together, the only reasonable interpretation is that the letter of intent obligated P & L to perform carpentry and framing work and that Balboa bonded P & L's performance. Indeed, the letter of intent was complete in that it left nothing upon which the parties had not agreed. The fact that P & L and K & D termed the obligation a letter of intent rather than a contract does not control the legal effect of their agreement. *Houston Chronicle Publishing Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).

### DEFAULT UNDER THE LETTER OF INTENT

Balboa argues that the trial court erred in finding that P & L defaulted under the letter of intent and thus it is not liable on its bond. Balboa asserts that, ". . . a contract of suretyship will be strictly construed so as to impose on the surety only such burdens or obligations as clearly come within the terms of the contract, and such contract will not be extended by implication or presumption." *Standard Accident Insurance Co. v. Knox*, 144 Tex. 296, 184 S.W.2d 612, 615 (1944). Although we agree with this general rule, the surety contract must be construed to carry out the purpose for which it was executed and the intention of the parties thereto as evidenced by the written language. *First State Bank of Temple v. Metropolitan Casualty Insurance Company of New York*, 125 Tex. 113, 79 S.W.2d 835, 840 (1935). The rule of strict construction does not require a departure from the general rules of construction with a view of relieving the surety from an onerous condition or obligation, but merely provides that the surety's obligation shall not be extended by implication or presumption. As in other contracts, the suretyship agreement is interpreted to ascertain the obligation intended by the parties, gathered from the instruments as a whole. Only then does the rule of strict construction apply to prevent extension of the obligation by implication or presumption. *State National Bank of Fort Worth v. Vickery*, 206 S.W. 841 (Tex. Comm'n App. 1918, judgmt. adopted). Since the obligation clearly comes within the terms of the bond, the rule of *Knox*, preventing expansion of the surety's obligation by implication or presumption, is inapplicable.

### NOVATION

Balboa next argues that execution of the two subcontracts with essentially the same terms as the letter of intent is a novation that supersedes the letter of intent, thus releasing the surety. Balboa cites no authority to support this contention. The rule regarding supersession of a contract by a subsequent agreement is set out in *Willeke v. Bailey*, 144 Tex. 157, 189 S.W.2d 477, 479 (1945). If the parties to one contract execute another whose terms are so inconsistent with the first that they both cannot stand, the first agreement is conclusively presumed to have been superseded by the second. Balboa does not as-

sert that the two subcontracts are inconsistent, but rather that they are essentially the same. Consequently, application of *Willeke* is precluded. We recognize that Balboa may have had a valid defense if the subcontracts had materially altered the obligation Balboa bonded under the letter of intent. *Straus-Frank Co. v. Hughes*, 138 Tex. 50, 156 S.W.2d 519 (1941). However, neither the summary judgment evidence nor Balboa has raised this contention.

Affirmed.