PHILLIPS NATURAL GAS COMPANY, Appellant,

v.

John V. CARDIFF, Jr., James L. Cardiff, Robert L. Cardiff, George H. Cardiff, William P. Cardiff, Ella E. Cardiff Kuchenbecker, Individually and as Independent Executrix of the Estate of Don Hall Cardiff, K–B Associates, and Westland Ventures, Appellees.

No. 01–90–00473–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 10, 1991.

Rehearing Denied Feb. 13, 1992.

Thomas L. Schubert, Lori M. Gallagher, William D. Noel, Houston, for appellant.

Jon L. Tankersley, Stanley B. Binion, Houston, for appellees.

Before DUGGAN, MIRABAL and O'CONNOR, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal by Phillips Natural Gas Company (PNG), appellant, from a partial summary judgment granted John V. Cardiff, Jr., et al., appellees, from the denial of a second motion for partial summary judgment by PNG, and from an award of damages by the jury.

In 1975, Seaway Pipeline, Inc. (Seaway) constructed a 500–mile, 30–inch pipeline from Freeport, Texas to Cushing, Oklahoma. By agreement dated March 4, 1976, Seaway purchased a private easement in the Cardiffs' property for the purpose of constructing, maintaining, and operating a pipeline *"solely* for the transportation of crude oil." (emphasis added.) The easement covers a strip of land approximately two miles long and 60 feet wide and consists of 14.778 acres. Seaway constructed the pipeline and continuously transported crude oil through the pipeline until April 1, 1984.

On May 1, 1984, PNG purchased a 347–mile segment of the 500–mile pipeline for the purpose of transporting natural gas.

By purchasing the pipeline, PNG obtained the assignment of Seaway's rights and interests under the easement agreement.

Recognizing that the easement agreement permitted the right to transport only crude oil, PNG commenced negotiations with the Cardiffs to obtain the additional right to transport natural gas. After negotiations with the Cardiffs proved unsuccessful, PNG filed a condemnation action to acquire the right to transport natural gas through the two-mile piece of pipe located on the Cardiffs' property.

On October 12, 1984, based on the commissioners' decision, the trial court signed a condemnation order and a writ of possession, both of which expressly granted PNG the immediate right to transport natural gas through the pipeline on the easement. On December 27, 1984, pending appeal to the trial court, PNG began transporting natural gas through the two-mile piece of pipeline.

On May 26, 1988, the trial court granted a partial summary judgment in favor of PNG. The partial summary judgment provided that:

(1) PNG is a gas utility vested with the power of eminent domain;

(2) PNG made a proper determination of public necessity to transport natural gas;

(3) prior to filing this condemnation action, PNG negotiated in good faith for the right to transport natural gas; and

(4) PNG complied with the statutory prerequisites in condemning the right to transport natural gas.

Thereafter, the Cardiffs and PNG both filed motions for summary judgment (PNG's second motion for summary judgment). In its second motion for summary judgment, PNG sought a declaration that (1) PNG was vested with full title and all rights and interests provided in the easement, and (2) the right to transport natural gas is a condemnable right.

On December 5, 1988, the trial court granted a partial summary judgment in favor of the Cardiffs and denied PNG's second motion for partial summary judgment. The partial summary judgment provided that:

(1) the easement was abandoned and thereby extinguished prior to or as of October 12, 1984;

(2) under the terms of the easement agreement, the easement and right-of-way had become null and void and had reverted to the Cardiffs;

(3) under the terms of the easement agreement, title to the two-mile pipeline had been forfeited to the Cardiffs;

(4) in light of the foregoing rulings, PNG's condemnation of only the right to transport natural gas through the two-mile pipeline constituted an "improper taking."

The trial court did not expressly state the bases for these holdings, but stated that the holdings were founded on the parties' oral arguments, on the motions, authorities cited therein, and on interrogatory responses.

Following the entry of the partial summary judgment in their favor, the Cardiffs filed a counterclaim alleging that PNG's wrongful possession and use of the Cardiffs' land and pipeline constituted a trespass. Thereafter, PNG amended its original petition in condemnation to obtain an easement for both the pipeline and the right to transport natural gas. On January 3, 1989, PNG took possession of the easement and pipeline pursuant to the order of the trial court.

A jury trial was held to determine (1) trespass damages, (2) the value of the new easement to transport natural gas, and (3) the value of the two-mile piece of pipe in the ground as of January 3, 1989. In answers to the four questions submitted, the jury found: (1) the precondemnation trespass damages for the value of the use of the easement and the two-mile piece of pipe on the Cardiffs' property between October 12, 1984, and January 3, 1989, was $1,102,-999; (2) the value of the new easement as of January 3, 1989, was $147,001; (3) PNG had not acted with malice in taking possession of the property and using it between October 12, 1984, and January 2, 1989; and, therefore, (4) no punitive damages were due by PNG to the Cardiffs.

*Summary Judgment*

In points of error one through five, PNG contends that the trial court erred (1) in granting the Cardiffs' motion for partial summary judgment; (2) in denying PNG's cross-motion for partial summary judgment; (3) in its four rulings in the December 5, 1988 summary judgment; (4) in either overruling PNG's motion for new trial and motion to correct, modify, or reform the judgment, or in rendering judgment, because the rulings and legal conclusions in the December 5, 1988, partial summary judgment were incorrect.

In reviewing a summary judgment, this Court must determine whether the summary judgment proof establishes as a matter of law that there are no genuine issues of fact and that the movant is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Furthermore, all reasonable inferences will be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). If the summary judgment was improperly granted, this Court would normally reverse the judgment and remand the cause for a trial on the merits. *Tobin v. Garcia*, 159 Tex. 58, 63–64, 316 S.W.2d 396, 400 (1958). However, where both parties file a motion for summary judgment, and one is granted and one is denied, the denial may be considered by the reviewing court if the appealing party complains of both the granting of the opponent's motion and the denial of its own motion. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). This court may then reverse the trial court's judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Id.*

*Abandonment*

PNG argues that the easement was not abandoned, because there was no abandonment under the terms of the easement agreement or the common law. The Cardiffs argue, and the trial court agreed that, under the common law, PNG's intent to change the use, or its actual change of use, of the express easement constituted abandonment.

When a written agreement contains an express provision, the written agreement, not the common law on that subject, controls. *Kothe v. Harris County Flood Control Dist.*, 306 S.W.2d 390, 393 (Tex. Civ.App.—Houston 1957, no writ). Here, the agreement contains an express provision regarding abandonment; thus, the agreement controls abandonment. Therefore, the issue presented is whether PNG abandoned the easement under the terms of the agreement.

*Construction of the Easement Agreement*

The proper construction of an unambiguous agreement is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). In construing an agreement, the courts give effect to the objective intention of the parties as expressed in or as apparent from the writing. *Id.* It is assumed that the parties intended to give effect to every clause in the agreement and did not intend to render any clause meaningless. *Id.*

Here, the easement agreement expressly gives the grantee, and its successors and assigns, the privilege of constructing, maintaining, inspecting, protecting, repairing, operating, replacing, and removing one 30–inch pipeline for the transportation of crude oil. The pipe is not to be used for any other purpose. When the instrument in unambiguous language limits the use to the carrying of crude oil by a 30–inch pipe, then that is the extent of the use, and any other use is excessive and beyond the scope of the easement. *Kearney & Son v. Fancher*, 401 S.W.2d 897, 903 (Tex.Civ. App.—Fort Worth 1966, writ ref'd n.r.e.). However, *enlarging* the easement by con-

demnation, pursuant to a valid power of eminent domain, does not result in abandonment of the easement. *City of San Antonio v. Ruble,* 453 S.W.2d 280, 283 (Tex.1970).

The agreement further contains specific language regarding abandonment of the easement and the two-mile piece of pipeline. The agreement provides that if the grantee (now PNG, its successors and assignees):

> [S]hall cease to operate its said one (1) *pipeline on the easement and right-of-way and* shall thereafter *cease such operation* of its said one (1) pipeline on the easement and right-of-way *for a period of twenty-four (24) consecutive calendar months, after initial construction, then* and in such event, *the grant made herein shall become null and void and the easement and right-of-way shall revert absolutely to* [the Cardiffs].... In the event the easement becomes null and void pursuant to this paragraph and [PNG] fails to remove all of its said property located on the easement and right-of-way within the time limitation period set forth in this paragraph, any of such property remaining on the easement and right-of-way after such date shall be forfeited to and become the property of [the Cardiffs], and [PNG] shall have no other or further rights, titles, liabilities or obligations pertaining thereto.

(Emphasis added.)

This language of the agreement provides for abandonment, reversion and forfeiture of the easement and the two-mile piece of pipeline only when the pipeline for the transportation of crude oil ceases to be operated for 24–consecutive calendar months. It is undisputed that before the condemnation order, the maximum amount of time the pipeline was not in operation was less than seven months. Therefore, before the condemnation order was entered, there was no abandonment under the terms of the agreement. *See City of San Antonio v. Ruble,* 453 S.W.2d at 283.

Because PNG did not abandon the easement under the agreement before the condemnation, there was no abandonment of the easement, and the trial court erred in ruling that the easement had reverted and that title to the pipeline had been forfeited as provided for in the agreement.

*Condemnation of Right to Transport Natural Gas*

■ The Cardiffs argue, and the trial court agreed, that in light of the abandonment of the easement, PNG's condemnation action for the "right" to transport natural gas through the pipeline constituted an improper taking.

The record reflects that on October 12, 1984, the date that PNG took by assignment from Seaway the right to transport natural gas, PNG was vested with full title and all rights and interests provided in the easement. The easement, however, did not grant the right to operate the pipeline as a natural gas pipeline. Through a condemnation proceeding, PNG sought to enlarge its easement rights to include the right to transport natural gas through the existing pipeline located in the easement. It is well settled that a right or interest already owned in property may be increased through eminent domain. *Brazos River Conservation & Reclamation Dist. v. Allen,* 141 Tex. 208, 215, 171 S.W.2d 842, 846 (1943); *Lo–Vaca Gathering Co. v. Earp,* 487 S.W.2d 789, 790 (Tex.Civ.App.—El Paso 1972, no writ). PNG had a right to condemn the additional real property, because of its ownership of the easement and its valid power of eminent domain. Under the cases cited above, it is apparent that PNG's condemnation of the additional right to transport natural gas through the pipeline was proper, and summary judgment should have been granted in favor of PNG on this issue. The Cardiffs' condemnation damages for PNG's easement right to transport natural gas should date from October 12, 1984.

We hold that the trial court's summary judgment findings of abandonment, reversion, and forfeiture of the easement under the agreement by PNG were incorrect. Because there was no abandonment of the easement, and further because PNG had a right to use the easement, there was no basis for finding that PNG's condemnation

of only the "right" to transport natural gas constituted an improper taking. Therefore, the trial court erred in granting summary judgment on these grounds.

Appellant's points of error one through five are sustained. The events that followed the trial court's errors in granting the Cardiffs' motion for partial summary judgment and in denying PNG's second motion for partial summary judgment, i.e., the Cardiffs' counterclaim for trespass and the jury trial to establish damages and values for the easement and pipeline, all occurred as a result of the summary judgment rulings. Likewise, PNG's remaining points of error deal with those events whose bases have been removed; we need not address these points of error.

We affirm the trial court's partial summary judgment for PNG granted May 26, 1988. We reverse the remainder of the trial court's judgment. We render judgment that PNG's motion for partial summary judgment filed June 17, 1988, be granted. We remand the cause to the trial court for a new trial on condemnation damages, instructing the trial court to use October 12, 1984, as the date of the taking.