NO. 07-05-0386-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MAY 2, 2007


 ______________________________



YORKSHIRE INSURANCE CO., LTD. AND


OCEAN MARINE INSURANCE CO., LTD., APPELLANTS



V.



DIATOM DRILLING COMPANY AND EMPLOYER'S


CONTRACTOR SERVICES, INC., APPELLEES


_________________________________



FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;



NO. 33,355; HONORABLE JOHN LAGRONE, JUDGE


_______________________________




Before QUINN, C.J., and HANCOCK, J., and BOYD, S.J. (1)

OPINION


 Appellants, Yorkshire Insurance Co., Ltd., and Ocean Marine Insurance Co., Ltd.
(collectively, "Insurers"), appeal a summary judgment granted in favor of appellees, Diatom
Drilling Co. (Diatom) and Employer's Contract Services, Inc. (ECS), in Insurers' action for
declaratory relief or reformation and the award of attorney's fees to Diatom and ECS. We
reverse and render judgment in favor of Insurers. We reverse and remand the award of
attorney's fees and costs.

Background

 Randall Jay Seger did drilling work for two related companies, Diatom Drilling Co.,
L.P., and Employer's Contractor Services, Inc. ECS was a corporation established by
Diatom's general partner, Cynthia Gillman, to provide oil field services to Diatom and other
drilling contractors. On July 13, 1992, while employed by ECS but providing services to
Diatom, Randall was killed when a Diatom rig he was working on collapsed. Diatom, who
was insured by a Lloyd's of London-type comprehensive general liability (CGL) insurance
policy at the time of the accident, notified the subscribing insurers (collectively, "the CGL
insurers") of the accident. Insurers were members of this group.

 Because the CGL policy was procured through the Lloyd's of London market, the
general terms and exclusions of the policy were drafted by Diatom/ECS and its agents. 
The "cover note" for this CGL policy identified Diatom and ECS as the insureds, provided
a maximum of $500,000 of coverage for any one bodily injury accident or occurrence, and
contained a "condition," inter alia, "Excluding Leased-In Employees/Workers." Sixteen
insurers subscribed to this CGL policy with each assuming a proportionate share of the
liability coverage provided by the policy. Specifically, Yorkshire assumed 16.472 percent
and Ocean Marine assumed 10 percent of the coverage. The standard policy provisions
indicate that each of the subscribing insurers' liability is several. 

 In June of 1993, Randall's parents (the Segers) filed suit against Diatom/ECS and
its partners alleging negligence and gross negligence. The CGL insurers were not
specifically notified of the suit at the time that it was filed. The suit sat virtually dormant
until 1998. In 1998, Diatom/ECS demanded that the CGL insurers provide a defense to
the Segers' suit. The CGL insurers refused to provide a defense contending that Randall's
death was not covered and that Diatom/ECS failed to provide timely notice of suit.

 On March 27, 2001, the Segers' suit against Diatom/ECS was tried. The trial court
entered judgment against Diatom/ECS and awarded the Segers $15,000,000, plus pre-
and post-judgment interest. Following the entry of this judgment, Gillman contacted the
CGL insurers to inquire as to what they intended to do about the judgment. When Gillman
received no response, she assigned Diatom's and ECS's rights against the CGL insurers
to the Segers. Following the assignment, the Segers filed suit against the CGL insurers
seeking damages based on the insurers' wrongful refusal to defend Diatom/ECS and
negligent failure to settle the Segers' claim when demand was made within policy limits. 
Prior to trial on the assigned Stowers action, the Segers settled their claims against all of
the remaining solvent CGL insurers, except Yorkshire and Ocean Marine, and the settling
insurers were dismissed from the suit. Insurers filed a third-party claim for declaratory
relief or for reformation of the CGL policy against Diatom and ECS. The present appeal
relates to this third-party action.

 Both Diatom/ECS and Insurers filed motions for summary judgment relating to
Insurers' declaration and reformation actions. The trial court granted Diatom/ECS's motion
and denied Insurers' motion, severed the third-party claims from the Segers' Stowers
action, and ordered that the issue of attorney's fees be set for a future hearing. On April
21, 2006, the trial court entered final judgment in the severed third-party action consistent
with the order discussed above and awarded Diatom/ECS $68,385 for attorney's fees
through trial. 

 Insurers present seven issues on appeal. Their first issue contends that the trial
court erred in denying Insurers' summary judgment on the declaratory judgment action. 
By their second and third issues, Insurers contend that, if coverage for Randall Seger's
death is found, the trial court erred in not reforming the policy to exclude the claim. By their
fourth issue, Insurers contend that the trial court erred in sustaining Diatom/ECS's
assertion of privilege relating to certain documents. By their fifth issue, Insurers contend
that the trial court erred in awarding Diatom/ECS attorney's fees because there was no
basis for judgment and no evidence to support the amount awarded. Insurers' sixth issue
is a general assignment of error in the trial court's granting of summary judgment. See
Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970). Finally, by their seventh
issue, Insurers contend that the trial court erred in granting Diatom/ECS's evidentiary
objections and in denying objection made by Insurers. Because we conclude that the
declaratory judgment on coverage issue is dispositive, we need not address the other
issues raised by Insurers.

Coverage

 The trial court granted summary judgment in favor of Diatom and ECS on Insurers'
declaratory judgment action seeking a declaration that injury and death claims made by
employees that were leased by ECS to Diatom were specifically excluded by the CGL
policy. By their sixth issue, Insurers generally challenge the trial court's grant of summary
judgment and, by their first issue, expressly challenge the denial of their summary
judgment motion. Insurers contend that the CGL policy unambiguously excludes coverage
for injury and death claims made by ECS employees leased in to Diatom, such as the
claims asserted by the Segers. Further, Insurers contend that their construction of the
exclusion is bolstered when the circumstances surrounding the policy's formation are
considered. Diatom/ECS contend that the trial court did not err because declaratory relief
was unavailable to Insurers because Insurers sought to establish their construction of the
exclusion as a defense to the Segers' claim. Diatom/ECS contend, in the alternative, that
Insurers produced no evidence that the Segers' claim was excluded by the CGL policy.

 When both parties to a suit move for summary judgment, each party bears the
burden of establishing that it is entitled to judgment as a matter of law. City of Garland v.
Dallas Morning News, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one
party summary judgment and denies the other, we review both parties' summary judgment
evidence, determine all questions presented, and render the judgment the trial judge
should have rendered. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872
(Tex. 2000). When the trial court does not specify the basis on which it granted summary
judgment, the judgment will be affirmed on any meritorious ground expressly presented in
the motion and which is preserved for appellate review. State Farm Fire & Cas. Co. v.
S.S., 858 S.W.2d 374, 380 (Tex. 1993). We review a summary judgment de novo to
determine whether the prevailing party has established its right to summary judgment as
a matter of law. See Dallas Cent. Appraisal Dist. v. Cunningham, 161 S.W.3d 293, 295
(Tex.App.-Dallas 2005, no pet.). In reviewing a summary judgment, we must examine the
entire record in the light most favorable to the nonmovant, indulging every reasonable
inference and resolving any doubts against the motion. See City of Keller v. Wilson, 168
S.W.3d 802, 824-25 (Tex. 2005).

 Initially, Diatom/ECS contend that the trial court could have properly granted
summary judgment on Insurers' declaratory judgment action based on declaratory relief
being unavailable. Diatom/ECS cite Howell v. Mauzy, 899 S.W.2d 690, 706
(Tex.App.-Austin 1994, writ denied), for the general rule that declaratory judgments are
not available to settle disputes already pending before the court. However, the Howell
court goes on to state that, "A court may allow a declaratory-judgment counterclaim,
however, if it is something more than a mere denial of the plaintiff's claim and has greater
ramifications than the original suit." Id. Looking specifically to the relief sought by Insurers
in their counterclaim for declaratory relief, Insurers sought a declaration that "on the date
of Randall Seger's death, the operative insurance documents excluded liability for injury
or death to 'leased-in employees/workers . . . .'" Insurers were entitled to seek a
declaration regarding the CGL policy's coverage independent of the Segers' Stowers action
and the declaration sought does not merely deny the Segers' claim. In fact, the declaration
sought requests a construction of the "leased-in employee/worker" exclusion contained in
the CGL policy, an issue which would not necessarily be reached in the Segers' Stowers
claim. (2) Thus, we conclude that declaratory judgment regarding construction of the leased-in employee exclusion was available to Insurers. 

 Insurers sought a declaration of the proper construction of the cover note's condition
"Excluding Leased-In Employees/Workers." The CGL policy includes no definitions relating
to this exclusion. According to Insurers, a standard "leased worker" exclusion was not
established until 1993. Insurers contend that the proper construction of the exclusion is
that the CGL insurers would not be liable for claims made by workers that were "leased-in"
to Diatom. However, at the time of the formation of the CGL policy and through its
effective period, the record reflects that all of Diatom's drilling workers were leased in from
ECS. Insurers contend that the plain language of the exclusion and the circumstances
surrounding the formation of the CGL policy evidence that it was always Diatom/ECS's
intent to exclude injury and death claims made by an ECS employee leased to Diatom. 
Diatom/ECS contend that any declaration that the "Leased-In Employees/Workers"
exclusion limited liability for injury claims would require the trial court to add to the language
of the contract. 

 The interpretation of insurance policies is governed by the same rules of
construction applicable to other written contracts. State Farm Life Ins. Co. v. Beaston, 907
S.W.2d 430, 433 (Tex. 1995). In construing a written contract, the court's primary concern
is to ascertain the true intentions of the parties as expressed in the instrument. Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983). Terms in an insurance contract will be given
their ordinary meaning unless the policy shows that the words were meant in a technical
or different sense. Sec. Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex. 1979). If
terms in the contract can be given a definite or certain legal meaning, they are not
ambiguous and the court will construe the contract as a matter of law. Coker, 650 S.W.2d
at 393. When a contract contains an ambiguity, the granting of a motion for summary
judgment is improper because the interpretation of the contract becomes a fact issue. Id.
at 394.

 Diatom/ECS contends that the leased-in worker exclusion is ambiguous because
the exclusion could reasonably exclude leased-in workers from being "insureds" under the
policy, claims made for damages caused by leased-in workers, claims made by leased-in
workers for injury or death, or claims made by families of leased-in workers for wrongful
death. However, as a matter of law, Diatom/ECS's position that the exclusion is
ambiguous precludes summary judgment because an ambiguity in a contract gives rise to
a fact question regarding the proper interpretation of the contract. Id. at 394. Since this
ground for summary judgment creates a material fact question, Diatom/ECS failed to
expressly present a ground upon which summary judgment could be based. See Tex. R.
Civ. P. 166a. As the declaration sought by Insurers was available and as Diatom/ECS
failed to present any other grounds upon which summary judgment could be granted, we
conclude that the trial court erred in granting Diatom and ECS summary judgment on
Insurers' declaratory judgment action.

 Looking solely to the language used in the exclusion, the leased-in worker exclusion
is not sufficiently clear to support Insurers' construction as a matter of law. However, in
construing a contract, we must consider the circumstances existing at the time that the
contract was entered into as an aid in determining the intent of the parties. See Sun Oil
Co. v. Madeley, 626 S.W.2d 726, 731 (Tex. 1981); City of Pinehurst v. Spooner, 432
S.W.2d 515, 518 (Tex. 1968). In the present case, there is ample evidence that one of the
primary intents of Diatom/ECS in obtaining the CGL policy was to exclude coverage for
injury claims made by either Diatom's or ECS's drilling workers. ECS, the employer of the
drilling workers, was created to do nothing more than lease drilling workers to Diatom and
other drilling operations. To insure these workers, ECS obtained a $150,000 accidental
death and injury policy in lieu of providing workers' compensation insurance. Diatom had
only three employees at the time that the CGL policy was entered into and each of these
employees were excluded from coverage under the CGL policy, but were covered by
workers' compensation insurance. The leased-in worker exclusion was drafted by
Diatom/ECS or their agents to exclude drilling workers leased to Diatom from coverage
under the CGL policy because those leased-in drilling workers that were employed by ECS
were to be covered by the $150,000 accidental death and injury policy. Considering the
circumstances surrounding the creation of the CGL policy, we conclude that the parties to
the present dispute, who were parties to the creation of the CGL policy, clearly and
unambiguously intended to exclude the CGL insurers from liability for injury or death claims
of workers that were leased-in by Diatom, including those leased from ECS.

 We reverse the trial court's summary judgment in favor of Diatom and ECS and
render summary judgment declaring that, on the date of Randall Seger's death, the CGL
policy at issue in this appeal excluded liability for injury or death to leased-in
employees/workers.

Other Issues

 Insurers' second through fourth issues in this appeal are made contingent on our
affirming the trial court's grant of summary judgment on the declaratory judgment action. 
As we have reversed the trial court's grant of summary judgment and rendered judgment
in favor of Insurers, we need not address these issues. 

 By their fifth issue, Insurers contend that Diatom and ECS are not entitled to
attorney's fees. As we have rendered declaratory judgment in favor of Insurers, we reverse
that portion of the judgment awarding Diatom and ECS attorney's fees and remand this
issue to the trial court for a determination of whether attorney's fees should be awarded
and, if so, the appropriate amount of the award. See Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997).

 Finally, neither party addressed Insurers' seventh issue relating to the admission or
exclusion of evidence. As a result, we conclude that this issue has not been adequately
briefed and is, therefore, waived. See Tex. R. App. P. 38.1(h); Gen. Serv. Comm. v. Little-Tex. Insul. Co., 39 S.W.3d 591, 604 n.1 (Tex. 2001); Fredonia State Bank v. Am. Life Ins.
Co., 881 S.W.2d 279, 284-85 (Tex. 1994). It appears that Insurers' issue relates to the trial
court's sustaining Diatom/ECS's objection to Insurers' evidence submitted in opposition to
Diatom/ECS's motion for summary judgment. However, we have concluded that the trial
court erred in granting summary judgment to Diatom/ECS without consideration of this
excluded evidence. Thus, we conclude that this waiver is of no effect in our resolution of
this appeal.

Conclusion

 We reverse the trial court's summary judgment and render judgment declaring that,
on the date of Randall Seger's death, the CGL policy at issue in this appeal excluded
liability for injury or death to leased-in employees/workers. We also reverse the trial court's
award of attorney's fees in this cause and remand for further proceedings consistent with
this opinion.


 Mackey K. Hancock

 Justice




1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. By way of example, if the Segers are able to establish that Insurers failed to meet
the exceptions to the general prohibition against unauthorized insurers being allowed to
rely on their contractual defenses, the determination of whether the CGL policy specifically
excluded claims by leased-in employees/workers would not be reached.